## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KATHLEEN MORGAN and TIRSA OTERO,**

  **Plaintiffs,**

  **v.**         **Case No. 21-2150-DDC**

**CITY OF OVERLAND PARK, KANSAS,**

  **Defendant.**

___

## MEMORANDUM AND ORDER

Plaintiffs Kathleen Morgan and Tirsa Otero currently are employed by defendant, the City of Overland Park, Kansas Police Department. Both plaintiffs allege that defendant has discriminated and retaliated against them by failing to promote them to higher-ranking positions. Specifically, plaintiff Morgan asserts that defendant passed over her for a promotion to Major because of sex and age discrimination and as retaliation for complaining about discrimination. And, plaintiff Otero contends that defendant failed to promote her to Captain because of sex, age, race, and national origin discrimination and as retaliation for complaining about discrimination. Both plaintiffs assert that defendant's failure to promote them violates the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e-17.

Defendant has filed a Motion for Summary Judgment against all of plaintiffs' ADEA and Title VII discrimination and retaliation claims. For reasons explained below, the court grants defendant's Motion for Summary Judgment (Doc. 32).

## I.     Uncontroverted Facts

The following facts either are stipulated in the Pretrial Order (Doc. 29), uncontroverted, or where genuinely controverted, viewed in the light most favorable to plaintiff—the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

The court begins its discussion of the uncontroverted summary judgment facts by discussing the facts relevant to defendant and its hiring practices. Next, the court provides the summary judgment facts relevant to plaintiff Kathleen Morgan's discrimination and retaliation claims. Finally, the court identifies the summary judgment facts relevant to plaintiff Tirsa Otero's discrimination and retaliation claims.

### A.  The City of Overland Park, Kansas and Its Hiring Practices

Defendant is the second-largest city in Kansas and employs more than 500 employees. Doc. 29 at 3 (Pretrial Order ¶ 2.a.1.). Defendant's Police Department employs more than 200 police officers. *Id.* (Pretrial Order ¶ 2.a.2.). The Police Department uses the following ranks: Police Chief; Lieutenant Colonel (also referred to as Deputy Chief); Major; Captain; Sergeant; and Officer. *Id.* (Pretrial Order ¶ 2.a.3.).

Defendant maintains and enforces an equal employment opportunity policy that prohibits discrimination in hiring and promotion decisions for all characteristics protected by law, including age, sex, race, and national origin. Doc. 33-1 at 1, 3–9 (Sanders Decl. ¶ 2 & Attach. 1). Defendant's Sexual and Other Harassment and Discrimination policy similarly prohibits discrimination against employees on the basis of all protected classifications. *Id.* at 1, 10–16 (Sanders Decl. ¶ 3 & Attach. 2). Defendant trains its employees—including plaintiffs and all others in its Police Department—about how to register complaints of harassment, discrimination, and retaliation. *Id.* at 1 (Sanders Decl. ¶ 4).

When filling vacancies within the Police Department for the ranks of Captain and Major, defendant uses internal promotional processes that allows Sergeants (applying for Captain) and Captains (applying for Major) who meet the position's minimum education, years of service, and years in rank qualifications to apply for promotion.  Doc. 33-2 at 1 (Donchez Decl. ¶ 2).  Defendant's Chief of Police, Francis Donchez, testified that each "promotion decision is a separate hiring decision and is made based on the employees' performance during the promotion process and their overall job performance."  Doc. 33-2 at 1 (Donchez Decl. ¶ 4).  Also, he testified that he considers a candidate's "potential to move to the next rank" when making promotion decisions.  Doc. 33-4 at 2 (Donchez Dep. 23:16–24:10).

After a promotional process concludes, the candidates not selected for promotion are placed in a pool to consider for possible future promotions.  *Id.* at 6–8 (Donchez Dep. 56:12–57:2, 64:5–15).  Typically, candidates in the pool remain eligible for possible promotion until the next promotional process.  *Id.* at 6–7 (Donchez Dep. 55:14–57:2).

Chief Donchez is the final decision-maker for promotions to the rank of Captain and Major.  *Id.* at 8 (Donchez Dep. 63:13–23).  Chief Donchez testified that, at all times relevant to this lawsuit, he has promoted the highest-ranked candidate—based on the averaged rankings of the Final Interview Panel—at the promotional process's conclusion.  Doc. 33-2 at 1 (Donchez Decl. ¶ 6).

Also, Chief Donchez testified that defendant is taking action to diversify the officer ranks in its Police Department.  Doc. 36-4 at 27–30 (Donchez Dep. 26:24–29:15).  But also, Chief Donchez testified, defendant selects the best candidates for a position, considering "[c]ompetency" as the "upmost importance[,]" and without considering a candidate's protected status.  *Id.* at 27 (Donchez Dep. 26:11–23).

On January 1, 2021, defendant increased the minimum educational requirements for the ranks of Major and Captain, among other positions.  Doc. 33-3 at 1, 6–24 (Donchez Decl. ¶ 5 & Attachs. 1–4).  Defendant announced this change in 2016, giving its officers five years to meet the new education requirements for future promotional opportunities.  Doc. 33-4 at 4 (Donchez Dep. 34:8–35:3).

### B.  Plaintiff Kathleen Morgan

Plaintiff Morgan has worked for defendant's Police Department since 1995.  Doc. 29 at 3 (Pretrial Order ¶ 2.a.4.).  She is a Caucasian woman, born in 1963.  Doc. 33-6 at 2–3 (Morgan Dep. 9:24–10:6); Doc. 33-1 at 1 (Sanders Decl. ¶ 5).  When plaintiff Morgan applied for the promotion to Major in 2020, she was 56 years old.  Doc. 33-1 at 1 (Sanders Decl. ¶ 5).

Plaintiff Morgan has a Bachelor's Degree in Criminal Justice and a Master's of Public Administration Degree, and she has completed credits toward a Master's of Criminal Justice Degree.  Doc. 33-6 at 4 (Morgan Dep. 34:21–35:6).  Defendant has promoted plaintiff Morgan several times during her employment, most recently to the rank of Major in May 2021.  *Id.* at 6–7 (Morgan Dep. 44:5–46:19).  Defendant never has disciplined plaintiff Morgan.  Doc. 36-1 at 54–55, 198 (Morgan Dep. 53:15–54:1, 197:12–14); Doc. 36-4 at 74–75 (Donchez Dep. 73:23–74:5).

### *Plaintiff Morgan's Application for Promotion to Major in 2020*

On May 22, 2020, defendant announced it would hold a promotional process to promote an applicant to the rank of Major and instructed interested Captains to send a Letter of Intent and resume to Chief Donchez's assistant.  Doc. 33-2 at 1 (Donchez Decl. ¶ 7).  Eight then-Captains applied for the promotion, including then-Captain Morgan, then-Captain Ryan Miller, Captain Jeff Burvee, Captain Steven Edwards, Captain Mark Fitzgerald, Captain Kyle Livengood,

Captain Jim Sutterby, and Captain Ray Tisinger.  *Id.* at 1–2 (Donchez Decl. ¶ 8).  Plaintiff Morgan was the only female candidate to seek promotion in the 2020 Major promotional process.  *Id.* at 2 (Donchez Decl. ¶ 10).

When defendant announced the 2020 Major promotional process, plaintiff Morgan held the rank of Police Captain—a rank she had held since 2012.  Doc. 29 at 3 (Pretrial Order ¶ 2.a.6.).  The 2020 Major promotional process was plaintiff Morgan's third attempt at promotion to the rank of Major.  Doc. 36-1 at 47–48 (Morgan Dep. 46:25–47:17).

### Other Candidates for the 2020 Major Promotion

The following paragraphs provide background information about candidates who applied for the 2020 Major promotion along with plaintiff Morgan.

Ryan Miller was born in 1976 and has served as an officer in defendant's Police Department since 1999 and as a Captain since 2015.  Doc. 33-1 at 1 (Sanders Decl. ¶ 6).  Miller completed an Associate's Degree in Law Enforcement in 1997 and a Bachelor's Degree in Crime and Delinquency in 1999.  Doc. 33-2 at 2, 38 (Donchez Decl. ¶ 9 & Attach. 9).  During the 2020 Major promotional process, Miller was working toward a Master's Degree in the Science of Management.  *Id.*

Jeff Burvee was born in 1969 and has served as an officer in defendant's Police Department since 1994 and as a Captain since 2016.  Doc. 33-1 at 1 (Sanders Decl. ¶ 7).  Burvee earned a Bachelor's of Arts Degree in Sociology in 1993.  Doc. 33-2 at 2, 27 (Donchez Decl. ¶ 9 & Attach. 5).  During the 2020 Major promotional process, Burvee had completed nine credit hours toward a Master's Degree in Justice Administration.  *Id.*

Steven Edwards was born in 1964 and has served as an officer in defendant's Police Department since 2008 and as a Captain since 2019.  Doc. 33-1 at 1 (Sanders Decl. ¶ 8).  Before

joining defendant's Police Department, Edwards served 10 years with the Johnson County, Missouri Sheriff's Department. Doc. 33-2 at 2, 28–32 (Donchez Decl. ¶ 9 & Attach. 6). Edwards has a Bachelor's Degree in Criminal Justice with a minor in Business Management. *Id.* at 31 (Attach. 6). During the 2020 Major promotional process, Edwards had completed 32 credit hours toward a Master's Degree. *Id.*

Mark Fitzgerald was born in 1966 and has served as an officer in defendant's Police Department since 1989 and as a Captain since 2007. Doc. 33-1 at 2 (Sanders Decl. ¶ 9). When he applied for the 2020 Major promotion, Fitzgerald held a Bachelor's of Science in Psychology and Crime and Delinquency Studies. Doc. 33-2 at 2, 34 (Donchez Decl. ¶ 9 & Attach. 7).

Jim Sutterby was born in 1970 and has served as an officer in defendant's Police Department since 1995 and as a Captain since 2012. Doc. 33-1 at 2 (Sanders Decl. ¶ 10). When he applied for the 2020 Major promotion, Sutterby held a Bachelor's Degree in Criminal Justice. Doc. 33-2 at 2, 43 (Donchez Decl. ¶ 9 & Attach. 11).

Ray Tisinger was born in 1963 and has served as an officer in defendant's Police Department since 1997 and as a Captain since 2016. Doc. 33-1 at 2 (Sanders Decl. ¶ 11). Before joining defendant's Police Department, Tisinger served 10 years with the Kansas City, Missouri Police Department. Doc. 33-2 at 2, 45–46 (Donchez Decl. ¶ 9 & Attach. 12). Tisinger completed a Bachelor's Degree in Management and Human Relations in 1996 and a Master's of Business Administration Degree in 2000. *Id.*

Kyle Livengood was born in 1981 and has served as an officer in defendant's Police Department since 2002 and as a Captain since 2017. Doc. 33-1 at 2 (Sanders Decl. ¶ 12). Livengood did not have a Bachelor's Degree when he applied for the 2020 Major promotion. Doc. 33-2 at 2, 35 (Donchez Decl. ¶ 9 & Attach. 8).

Each Captain who applied for promotion to Major met defendant's minimum qualifications for promotion—*i.e.*, having 10 years of service and attaining the rank of Captain. Doc. 33-2 at 2 (Donchez Decl. ¶ 11).

### *2020 Major Promotional Process*

The 2020 Major promotional process included the following components:  (1) submitting a resume and letter of intent; (2) responding to written essay questions; (3) a Majors' roundtable; (4) a City Panel Interview; and (5) a Final Interview Panel.  *Id.* (Donchez Decl. ¶ 12).

### *2020 Major Process – Written Essay Questions*

On June 8, 2020, Deputy Chief Simon Happer (who was responsible for coordinating the 2020 Major promotional process) emailed the candidates three essay questions about current policing issues facing the Department.  Doc. 33-7 at 1 (Happer Decl. ¶ 4).  He gave the candidates one day to submit written responses to the questions.  *Id.*

### *2020 Major Process – City Panel Interviews*

On June 11, 2020, a panel of department heads from defendant's other departments (or their designees) interviewed the candidates.  Doc. 33-7 at 1 (Happer Decl. ¶ 5).  The "City Panel" included the following five people:  City Attorney Tammy Owens; Court Administrator Mary Moss; Fire Chief Bryan Dehner; Assistant City Manager Kate Gunja; and Strategic Planning Manager Erin Ollig.  *Id.*  Before each interview, Deputy Chief Happer introduced the candidate to the City Panel and then left the room while the City Panel conducted the interview with the candidate.  *Id.*

Deputy Chief Happer instructed the City Panel to ask all candidates the same questions. *Id.* (Happer Decl. ¶ 6).  And, the City Panel members took notes about each candidate's answers. *Id.*  Plaintiff Morgan testified that none of the comments, questions asked, or discussion during

the City Panel interview had anything to do with the candidates' ages or genders.  Doc. 33-6 at 17 (Morgan Dep. 132:8–15).  And, plaintiff Morgan doesn't allege that there was anything discriminatory about the questions the City Panel asked her during the City Panel interview.  *Id.*

After the interviews had concluded, the City Panel discussed the candidates' strengths and weaknesses and provided their notes and general feedback to Deputy Chief Happer.  Doc. 33-7 at 1–2 (Happer Decl. ¶ 7).  The City Panel then collectively identified its top four candidates.  *Id.*  They included:  (1) then-Captain Morgan, (2) then-Captain Miller, (3) Captain Livengood, and (4) Captain Tisinger.  *Id.*

The City Panel is advisory in nature.  Doc. 33-2 at 2 (Donchez Decl. ¶ 13).  Defendant doesn't assign a specific weight to the City Panel interviews in the promotional process.  *Id.* Plaintiff Morgan testified that she is not aware of anything discriminatory about the City Panel's portion of the interview process during the 2020 Major promotional process.  Doc. 33-6 at 17 (Morgan Dep. 133:19–23).

### 2020 Major Process – Majors' Roundtable

The next step in the promotional process was a roundtable discussion about the candidates with defendant's four Majors.  Doc. 33-7 at 2 (Happer Decl. ¶ 8).  Deputy Chief Happer facilitated the Majors' roundtable discussion.  *Id.*  During this roundtable, the Majors discussed the strengths and weaknesses of each candidate and their beliefs about the candidates' readiness for promotion.  *Id.* (Happer Decl. ¶ 9).  According to Deputy Chief Happer and two other Majors who participated in the roundtable, the participants never discussed the candidates' ages or genders.  *Id.* (Happer Decl. ¶ 10); *see also* Doc. 33-9 at 1 (Houston Decl. ¶ 4);  Doc. 33-10 at 1 (Jenkins Decl. ¶ 4).

The Majors did not formally rank the candidates during the roundtable.  Doc. 33-7 at 2 (Happer Decl. ¶ 11).  But, during the discussions, all four Majors included then-Captain Ryan Miller in their top three.  *Id.* at 2, 4–5 (Happer Decl. ¶ 11 & Attachs. 1–2); *see also* Doc. 33-9 at 1 (Houston Decl. ¶ 5);  Doc. 33-10 at 1 (Jenkins Decl. ¶ 5).  Only Major Doug Dunn believed plaintiff Morgan was a top-three candidate.  Doc. 33-7 at 2 (Happer Decl. ¶ 11).  Majors Kelly and Houston believed Morgan was a "top middle" candidate.  *Id.*; *see also* Doc. 33-9 at 1 (Houston Decl. ¶ 5).  And, Major Jenkins believed she was either the fifth or sixth strongest candidate.  Doc. 33-7 at 2 (Happer Decl. ¶ 11); *see also* Doc. 33-10 at 1 (Jenkins Decl. ¶ 5).

Like the City Panel, the Majors' roundtable is advisory in nature.  Doc. 33-2 at 2 (Donchez Decl. ¶ 13).  Defendant doesn't assign a specific weight to the Majors' roundtable in the promotional process.  *Id.*

### 2020 Major Process - Final Interview Panel

The last step in the 2020 Major promotional process was each candidate's interview with the Police Department's Final Interview Panel.  Doc. 33-2 at 2 (Donchez Decl. ¶ 14).  The members of the Final Interview Panel for the 2020 Major promotional process were Chief Donchez, Deputy Chief Sonta Wilburn, Deputy Chief Happer, and Police Legal Advisor (PLA) Eric Blevins.  *Id.*

Plaintiff Morgan testified that she knew the Final Interview Panel was the most important part of the promotional process.  Doc. 33-6 at 13 (Morgan Dep. 99:16–100:2).  Also, she testified that when she has served as an evaluator in other promotional processes, she placed significant weight on candidates' performance during their final interviews when she ranked the candidates.  *Id.* at 37 (Morgan Dep. 259:1–3).

Before the interviews, each member of the Final Interview Panel reviewed the candidates' written essay responses.  Doc. 33-2 at 2 (Donchez Decl. ¶ 15); Doc. 33-7 at 2 (Happer Decl. ¶ 12);  Doc. 33-11 at 1 (Wilburn Decl. ¶ 4); Doc. 33-12 at 1 (Blevins Decl. ¶ 4). Then, on June 25, 2020, the Final Interview Panel interviewed each candidate, asking them a consistent series of questions about their qualifications for the position and their written essay answers.  Doc. 33-2 at 2 (Donchez Decl. ¶ 16).

Plaintiff Morgan testified that the questions asked by the Final Interview Panel were appropriate for purposes of the promotional process.  Doc. 33-6 at 18 (Morgan Dep. 135:13–136:3).  Also, she testified that none of the questions asked by the Final Interview Panel had anything to do with the candidates' age or gender.  *Id.*  Chief Donchez's notes reflect that he thought plaintiff Morgan gave "good answer[s]" to some interview questions.  Doc. 36-4 at 77–78 (Donchez Dep. 76:11–77:15).

At the end of each candidate's interview, the Final Interview Panel discussed the candidate's strengths and weaknesses.  But, they did not discuss how to rank the candidates or who any Panel member believed was best suited for promotion.  Doc. 33-2 at 2 (Donchez Decl. ¶ 17).  During the post-interview discussions, Deputy Chief Happer shared the City Panel's and Majors' opinions with the other members of the Final Interview Panel for them to consider when ranking the candidates.  Doc. 33-7 at 2 (Happer Decl. ¶ 13).

After the interviews, each member of the Final Interview Panel independently ranked the participants in the 2020 Major promotional process from 1 (first choice for promotion) to 8 (last choice for promotion).  Doc. 33-2 at 2 (Donchez Decl. ¶ 18).  The Final Interview Panel members sent their rankings to Chief Donchez or his assistant, and Chief Donchez tabulated the results.  *Id.*  Chief Donchez and Deputy Chief Happer testified that the rankings of each member

10

of the Final Interview Panel received equal weight when determining the candidates' final averaged rankings.  Doc. 33-4 at 9 (Donchez Dep. 65:15–66:1); Doc. 33-5 at 2–3 (Happer Dep. 15:23–17:7).  Under the prior Chief, the panel members' votes were weighted to give the Chief's preference additional weight, but Chief Donchez changed that practice so that his vote weighed equally with the votes of other members of the Final Interview Panel.  Doc. 33-5 at 2–3 (Happer Dep. 15:23–17:7).

Chief Donchez ranked the candidates in this order:  (1) Miller; (2) Fitzgerald; (3) Livengood; **(4) plaintiff Morgan**; (5) Tisinger; (6) Sutterby; (7) Burvee; (8) Edwards.[1]  Doc. 33-2 at 2 (Donchez Decl. ¶ 19).  Deputy Chief Happer ranked the candidates in this order:  (1) Miller; (2) Livengood; (3) Fitzgerald; (4) Sutterby; **(5) plaintiff Morgan**; (6) Tisinger; (7) Burvee; (8) Edwards.  Doc. 33-7 at 2, 6 (Happer Decl. ¶ 14 & Attach. 3).  Deputy Chief Wilburn ranked the candidates in this order:  (1) Miller; (2) Sutterby; **(3) plaintiff Morgan**; (4) Livengood; (5) Fitzgerald; (6) Burvee; (7) Tisinger; (8) Edwards.  Doc. 33-11 at 1, 3 (Wilburn Decl. ¶ 5 & Attach. 1).  PLA Blevins ranked the candidates in this order:  (1) Miller; (2) Fitzgerald; (3) Livengood; **(4) plaintiff Morgan**; (5) Tisinger; (6) Sutterby; (7) Burvee; (8) Edwards.  Doc. 33-12 at 1, 3 (Blevins Decl. ¶ 5 & Attach. 1).

Defendant calculates that, on average, the Final Interview Panel ranked the candidates in this order:

> (1) Miller (1.0);
> (2) Livengood (3.0);
> (3) Fitzgerald (3.0);
> **(4) Plaintiff Morgan (4.0)**;
> (5) Sutterby (4.5);
> (6) Tisinger (5.75);
> (7) Burvee (6.75);
> (8) Edwards (8.0).

---

[1]     The court bolds plaintiff Morgan's rank to reference more easily her placement in the ranks.

Doc. 33-2 at 2 (Donchez Decl. ¶ 19); Doc. 33-7 at 2, 6 (Happer Decl. ¶ 14 & Attach. 3); Doc. 33-11 at 1, 3 (Wilburn Decl. ¶ 5 & Attach. 1); Doc. 33-12 at 1, 3 (Blevins Decl. ¶ 5 & Attach. 1).[2]

Chief Donchez testified that, when ranking the candidates, he considered the following factors:  experience with the Department, performance, overall competency, a candidate's "potential" of moving forward in the Department, Majors' roundtable feedback, City Panel feedback, interview performance, and written essay answers.  Doc. 33-4 at 2–3 (Donchez Dep. 23:2–26:6).

When Deputy Chief Happer ranked the candidates, he considered the following factors: prior evaluations and performance, discipline history, Majors' roundtable feedback, City Panel feedback, interview performance, written essay answers, and knowledge of the candidate's background with the Department.  Doc. 33-5 at 9–10 (Happer Dep. 44:11–46:13).  When Deputy Chief Wilburn ranked the candidates, she considered the following factors:  experience with the Department, prior performance, leadership ability, education, overall competency, potential of moving forward in the Department, and performance during the final interview.  Doc. 33-3 at 3, 5 (Wilburn Dep. 23:21–24:2, 38:21–39:21).[3]  When PLA Blevins ranked the candidates, he considered the following factors:  years of service, years in rank, diversity of experience within the department, education, evidence of leadership ability, performance on the job, ability to perform the rank of Deputy Chief, the candidates' written essay responses, performance during the City Panel, performance during the Majors' roundtable, and performance during the final

---

[2]    Plaintiffs don't controvert the Statement of Fact with defendant's calculated average rankings. *See* Doc. 36 at 3–4.

[3]    Plaintiff Morgan testified that she has no evidence suggesting that Deputy Chief Wilburn discriminated against her in the hiring process.  Doc. 33-6 at 31 (Morgan Dep. 178:6–9).

interview.  Doc. 33-12 at 1 (Blevins Decl. ¶ 6).[4]  When considering which factors to emphasize, PLA Blevins used his experience serving as legal advisor to the Department and his knowledge of the position's job requirements.  *Id.* (Blevins Decl. ¶ 7).  When considering which factors to emphasize, Chief Donchez, Deputy Chief Happer, and Deputy Chief Wilburn attest that they used their experience with the Department, knowledge of the position's job requirements, and experience supervising the Department's Majors.  Doc. 33-2 at 2 (Donchez Decl. ¶ 20); Doc. 33-7 at 2 (Happer Decl. ¶ 15); Doc. 33-11 at 1 (Wilburn Decl. ¶ 6).

Plaintiff Morgan testified that, when evaluating candidates for promotion to the rank of Major, she believes years of service, time in rank, education, effective communication, ability to manage multiple projects at once, command school attendance, the ability to communicate clearly with the public, clear communication with subordinates, maintaining good relationships with other officers, participation in recruitment and retention of officers, strong leadership, strong command presence, leadership potential, understanding of substantive topics affecting the Department and community, and the ability to interact with citizen groups are all important considerations.  Doc. 33-6 at 11–12 (Morgan Dep. 84:13–86:3).  Plaintiff Morgan agrees there is "room for discretion" among the Police Department's leadership when deciding how to weigh the various factors in promotion decisions.  *Id.* at 12 (Morgan Dep. 86:8–87:14).  Also, she agrees that it is the role of Department leadership to weigh the various factors when evaluating candidates for promotion.  *Id.*

Each Final Interview Panel member believed that Miller's performance during the final interview was far superior to the performance of any of the other candidates.  Doc. 33-4 at 10 (Donchez Dep. 71:23–72:9); Doc. 33-7 at 2 (Happer Decl. ¶ 16); Doc. 33-11 at 1 (Wilburn Decl.

---

[4]     Plaintiff Morgan testified that she didn't "have any reason to believe" that PLA Blevins "discriminated against [her] in the hiring process."  Doc. 33-6 at 31 (Morgan Dep. 178:10–13).

¶ 7); Doc. 33-12 at 2 (Blevins Decl. ¶ 8).  None of the Final Interview Panel members ranked plaintiff Morgan as the best candidate for the promotion.  Doc. 33-2 at 2 (Donchez Decl. ¶ 19); Doc. 33-7 at 2, 6 (Happer Decl. ¶ 14 & Attach. 3); Doc. 33-11 at 1, 3 (Wilburn Decl. ¶ 5 & Attach. 1); Doc. 33-12 at 1, 3 (Blevins Decl. ¶ 5 & Attach. 1).  Each of the Final Interview Panel members attest that they never considered age or gender when ranking the candidates.  Doc. 33-2 at 3 (Donchez Decl. ¶ 21); Doc. 33-7 at 2 (Happer Decl. ¶ 17); Doc. 33-11 at 1 (Wilburn Decl. ¶ 8); Doc. 33-12 at 2 (Blevins Decl. ¶ 9).

### *Defendant Promotes Ryan Miller to Major*

After Chief Donchez tabulated the Final Interview Panel's rankings, he determined that then-Captain Ryan Miller unanimously finished first.  Doc. 33-2 at 3 (Donchez Decl. ¶ 22).  And, on July 5, 2020, defendant promoted Ryan Miller to the rank of Major with defendant's Police Department.  *Id.* (Donchez Decl. ¶ 23).

Plaintiff Morgan testified that she believes Chief Donchez wanted to promote then-Captain Ryan Miller because he liked him and liked that Miller's father had significant law enforcement experience.  Doc. 33-6 at 10 (Morgan Dep. 80:24–81:13); *see also* Doc. 36-1 at 81–84 (Morgan 80:8–83:5) (testifying that plaintiff Morgan's "perception" is that Chief Donchez wanted to promote Miller to Major because Miller's father was a police chief, Miller spent a lot of time in the Chief's office, and the Chief was comfortable around Miller).  Plaintiff Morgan believes the Final Interview Panel portion of the process is discriminatory because a male candidate younger than she is received the promotion, the evaluators have discretion when they evaluate candidates, and because she believes Chief Donchez and Deputy Chief Happer prefer promoting younger male candidates.  Doc. 33-6 at 19, 20 (Morgan Dep. 141:4–21, 145:2–22).

Chief Donchez testified that Miller was disciplined for his investigation of an accidental discharge that occurred during a training in 2012.  Doc. 36-4 at 69, 95 (Donchez Dep. 68:6–19, 94:5–19).  Chief Donchez didn't consider Miller's 2012 discipline during the 2020 Major promotional process.  *Id.* at 95 (Donchez Dep. 94:5–19).

### *Plaintiff Morgan's Post-Promotional Process Meetings*

After defendant promoted Major Miller, plaintiff Morgan spoke separately with Deputy Chief Happer, Deputy Chief Wilburn, and Chief Donchez about why she was not selected to promote to Major.  Doc. 33-6 at 21 (Morgan Dep. 146:1–4).

On August 6, 2020, plaintiff Morgan first met with Deputy Chief Happer, who provided largely positive feedback.  *Id.* at 21 (Morgan Dep. 148:6–149:4).  She testified that Deputy Chief Happer made the comment, "we want somebody that's going to stay."[5]  *Id.*  To that, plaintiff Morgan responded, "I never said I was going anywhere."  *Id.*  Plaintiff Morgan testified that she does not recall Deputy Chief Happer responding to her comment.  *Id.*  Also, she testified that she thought Deputy Chief Happer's comment was based on her age and the possibility that she might leave the Police Department.  *Id.*  But, plaintiff Morgan didn't raise any concerns about age or sex discrimination during her conversation with Deputy Chief Happer.  *Id.* at 30 (Morgan Dep. 175:15–20).

Also on August 6, 2020, plaintiff Morgan met with Chief Donchez to discuss her performance during the 2020 Major promotional process.  *Id.* at 22 (Morgan Dep. 155:3–5). During this conversation, plaintiff Morgan expressed frustration with her current assignment, which included supervising the Police Department's dispatchers, and Chief Donchez offered to

---

[5]     Deputy Chief Happer denies telling plaintiff Morgan that defendant was looking for a candidate who "was going to stay."  Doc. 33-7 at 2 (Happer Decl. ¶ 19).  But, the summary judgment standard requires the court to accept plaintiff's version of this conversation.

move her to an assignment supervising the Investigations unit—a higher profile unit.  Doc. 33-13 at 3 (Morgan August 6, 2020 Meeting Notes).  Also, Chief Donchez told Morgan that following Major Mike Kelly's retirement in the fall, the Police Department would put plaintiff Morgan and other candidates from the 2020 Major promotional process into Acting Major roles to evaluate how they would perform if permanently promoted to Major.  *Id.*  Chief Donchez attests that he made the decision to place candidates into Acting Major positions before his August 6, 2020 conversation with plaintiff Morgan.  Doc. 33-2 at 3 (Donchez Decl. ¶ 24).

During plaintiff Morgan's conversation with Chief Donchez, she told him she believed she was the best qualified candidate in the 2020 Major promotional process based on her background with the Department, years of service, years in rank, and educational achievements. Doc. 33-13 at 2 (August 6, 2020 Meeting Notes).  In response, Chief Donchez mentioned the importance of having "potential," and that a candidate can have degrees and experience, but that does not mean a candidate is ready to promote.  *Id.*  Plaintiff Morgan asked Chief Donchez whether he preferred younger male candidates, and Chief Donchez responded that he was offended by the question.  Doc. 33-6 at 24 (Morgan Dep. 162:2–14).  Plaintiff Morgan testified that she understood Chief Donchez's response to deny that age or gender was a factor for him. *Id.*

### Morgan Files Initial Charge of Discrimination

On August 18, 2020, plaintiff Morgan dual-filed a Charge of Discrimination with the EEOC and Kansas Human Rights Commission (KHRC).  Doc. 33-14 (Morgan EEOC Charge of Discrimination).  It alleged age and sex discrimination against defendant based on its decision to promote Ryan Miller to the rank of Major.  *See generally id*.  Specifically, plaintiff Morgan

alleged that she was "adversely denied a job promotion as a direct result of [her] age, 56" and her "female gender in or around July, 2020." *Id.* at 2–3.

Before she filed her Charge, the only instance where plaintiff Morgan had raised a concern about her sex or age was during her August 6, 2020 meeting with Chief Donchez. Doc. 33-6 at 33 (Morgan Dep. 202:20–203:25); *see also* Doc. 36-1 at 49 (Morgan Dep. 48:16–20) (testifying that, before the 2020 promotional process, plaintiff Morgan never raised any concerns about discrimination in other promotional processes). Plaintiff Morgan never pursued internal relief through defendant's internal processes, such as filing a complaint under defendant's Sexual and Other Harassment and Discrimination policy. Doc. 33-6 at 33 (Morgan Dep. 202:20–203:25).

In the 300 days before the date when plaintiff Morgan filed her Charge of Discrimination, defendant didn't promote any other members of its Police Department to the rank of major. Doc. 33-2 at 3 (Donchez Decl. ¶ 26). And, plaintiff Morgan's Charge of Discrimination didn't refer to any promotional decision other than the July 2020 promotion of Ryan Miller. *See generally* Doc. 33-14 (Morgan EEOC Charge of Discrimination). Plaintiff concedes that she is not pursuing a legal claim based on any promotional process other than the 2020 Major promotional process. Doc. 33-6 at 34 (Morgan Dep. 215:14–18). And, she never filed a charge based on a 2019 promotional process. *Id.* at 7–8 (Morgan Dep. 49:21–50:2). But, even so, plaintiff Morgan testified that she believes the 2019 promotional process was discriminatory because a younger, less qualified male was promoted over her. *Id.* (Morgan Dep. 49:5–52:16).

***Major Kelly Announces his Retirement***

In fall 2020, Major Kelly informed defendant that he intended to retire.  Doc. 33-4 at 10 (Donchez Dep. 69:24–70:7); Doc. 33-15 (October 2020 Acting Major Announcement).  His announcement opened another opportunity for defendant to promote a Captain to Major.  *Id.*

Because there was not a "clear-cut" second place finisher in the Final Interview Panel rankings, Chief Donchez decided to shift from prior practices and give two candidates from the 2020 Major promotional process an opportunity to serve as an Acting Major for three months to determine their readiness for promotion.  Doc. 33-4 at 10–11 (Donchez Dep. 70:3–20, 71:23–73:7); Doc. 33-15 (October 2020 Acting Major Announcement); *see also* Doc. 36-9 at 2–3 (Morgan Decl. ¶ 4) (testifying that Chief Donchez's use of a "trial period" by placing candidates into Acting Major positions to decide who to promote to an open position was something defendant had not done before).

Chief Donchez decided to place Captain Mark Fitzgerald (whose averaged rankings from the Final Interview Panel placed him tied for second) and plaintiff Morgan (whose averaged rankings from the Final Interview Panel placed her fourth) in the Acting Major position for three months.  Doc. 33-4 at 10–11 (Donchez Dep. 71:23–73:7).  Chief Donchez did not place Captain Kyle Livengood (whose averaged rankings from the Final Interview Panel placed him tied for second with Captain Mark Fitzgerald) in an Acting Major position because by the time defendant would make the formal promotion decision in 2021, Captain Livengood would not meet the Police Department's more stringent education requirements taking effect on January 1, 2021.  *Id.* at 10 (Donchez Dep. 71:23–72:15).

Chief Donchez attests that it is especially important for defendant to promote the best candidates to Major because defendant only has four Major positions and Majors hold significant responsibilities in the Police Department.  Doc. 33-2 at 3 (Donchez Decl. ¶ 27).

### Plaintiff Morgan Files an Amended Charge of Discrimination

On October 29, 2020, Morgan filed an Amended Charge of Discrimination with the EEOC and KHRC.  Doc. 33-16 (Amended Charge of Discrimination).  The Amended Charge alleged that defendant's decision to allow her an opportunity to compete against Captain Fitzgerald on an Acting basis for promotion to the rank of Major was discriminatory based on age and sex and retaliatory based on unspecified concerns she had registered about "[her] unequal treatment."  *Id.* at 2–4.

### Acting Major Periods

On November 8, 2020, defendant promoted Captain Fitzgerald to the rank of Acting Major for his three-month trial period.  Doc. 33-2 at 3 (Donchez Decl. ¶ 28).  Then, three months later, on February 14, 2021, defendant returned Fitzgerald to the rank of Captain, and promoted plaintiff Morgan to the rank of Acting Major for her three-month trial period.  *Id.* (Donchez Decl. ¶ 29).

### Command Staff Meeting About Acting Major Performance

On May 11, 2021, after plaintiff Morgan's and Captain Fitzgerald's respective three-month Acting periods had ended, Chief Donchez, PLA Blevins, Deputy Chief Happer, Deputy Chief Wilburn, Major Keith Jenkins, and Major Eric Houston met to discuss plaintiff Morgan's and Captain Fitzgerald's performance as Acting Majors.  Doc. 33-4 at 12–13 (Donchez Dep. 80:16–81:10); Doc. 33-17 (Donchez May 11, 2021 Meeting Notes).  During that meeting, the group agreed that plaintiff Morgan was the administratively superior candidate, while Captain

Fitzgerald was operationally superior.  Doc. 33-4 at 13 (Donchez Dep. 81:15–25); Doc. 33-17 (Donchez May 11, 2021 Meeting Notes).  When the meeting ended, the group unanimously concluded that because about 85% of the Major position's work was administrative in nature, so plaintiff Morgan was better suited for promotion.  Doc. 33-4 at 13 (Donchez Dep. 81:15–83:24); Doc. 33-17 (Donchez May 11, 2021 Meeting Notes).

The meeting's participants testified that they never considered age or gender in their discussions at this meeting.  Doc. 33-2 at 3 (Donchez Decl. ¶ 30); Doc. 33-7 at 2–3 (Happer Decl. ¶ 20); Doc. 33-11 at 2 (Wilburn Decl. ¶ 9); Doc. 33-12 at 2 (Blevins Decl. ¶ 10); Doc. 33-9 at 1 (Houston Decl. ¶ 6); Doc. 33-10 at 1 (Jenkins Decl. ¶ 6).

### Plaintiff Morgan Promoted to Major

On May 16, 2021, defendant formally promoted plaintiff Morgan to the rank of Major. Doc. 33-2 at 3 (Donchez Decl. ¶ 31).  Plaintiff Morgan asserts that Chief Donchez's decision to place her and Captain Fitzgerald in the Acting Major positions for six months before making the decision to promote plaintiff Morgan to Captain denied her three months of compensation at the rate of Major.  Doc. 36-9 at 2–3 (Morgan Decl. ¶ 4).

### Plaintiff Morgan's Involvement with Other Promotional Processes

Plaintiff Morgan first applied for a promotion with defendant in 2016.  Doc. 33-6 at 8 (Morgan Dep. 53:2–10); *see also* Doc. 33-1 at 2 (Sanders Decl. ¶ 13) (asserting the promotion occurred in 2016).  Plaintiff Morgan doesn't believe that this promotional process was discriminatory because the candidate ultimately promoted, Cindy Henson, was female.  Doc. 33-6 at 8 (Morgan Dep. 53:2–10).  When defendant promoted Cindy Henson to Major in 2016, she was 47 years old.  Doc. 33-1 at 2 (Sanders Decl. ¶ 13).  According to Chief Donchez, defendant

promoted Cindy Henson to Major in 2016 because the Final Interview Panel ranked her as the top candidate.  Doc. 33-2 at 3 (Donchez Decl. ¶ 32).

Plaintiff Morgan believes the 2019 Major promotional process was discriminatory because defendant promoted two men younger than her—Eric Houston and Keith Jenkins—who, plaintiff Morgan believes, were less qualified than her based on experience and education.  Doc. 33-6 at 7–8 (Morgan Dep. 48:25–50:14).  When defendant promoted Eric Houston to Major in 2019, he was 39 years old and had served as an officer with defendant's Police Department since 2002.  Doc. 33-9 at 1–2 (Houston Decl. ¶ 7).  Houston had served as a Captain, in an acting or permanent capacity, since 2014.  *Id.*  In 2001, Houston completed a Bachelor's of Science Degree.  *Id.* at 1 (Houston Decl. ¶ 1).  According to Chief Donchez and Deputy Chief Happer, defendant promoted Houston to Major in May 2019 because the Final Interview Panel ranked him as the top candidate.  Doc. 33-2 at 3 (Donchez Decl. ¶ 33); Doc. 33-5 at 8 (Happer Dep. 39:5–13).

When defendant promoted Keith Jenkins to Major in 2019, he was 53 years old and had served as an officer with defendant's Police Department since 1995.  Doc. 33-10 at 1 (Jenkins Decl. ¶ 7).  Jenkins had served as a Captain since 2017.  *Id.*  And, Jenkins has a Master's of Science Degree in Criminal Justice from the University of Louisville.  *Id.* (Jenkins Decl. ¶ 1).  According to Chief Donchez and Deputy Chief Happer, defendant promoted Jenkins to Major in October 2019 because the Final Interview Panel ranked him as the second best candidate in the 2019 promotional process.  Doc. 33-2 at 3 (Donchez Decl. ¶ 34); Doc. 33-5 at 8 (Happer Dep. 39:14–17).

Plaintiff Morgan was the only female Captain who applied for promotion in the 2019 Major's promotional process.  Doc. 33-2 at 3 (Donchez Decl. ¶ 35).  Other than believing

defendant passed over plaintiff Otero for promotion to the rank of Captain and that defendant discriminated against plaintiff Morgan during the 2019 and 2020 Major processes, plaintiff Morgan doesn't believe any other promotional processes she has participated in—either as a candidate or evaluator—were discriminatory.  Doc. 33-6 at 9 (Morgan Dep. 63:15–65:9).  When plaintiff Morgan has served as an evaluator in promotional process roundtables and promotional interview panels over the years, she has ranked younger candidates with fewer years of service or education ahead of older candidates with more years of service or education.  *Id.* at 35, 36 (Morgan Dep. 240:11–241:5, 243:2–245:7).

Plaintiff Morgan testified that she believes Chief Donchez has a preference for promoting white men, is more comfortable around men, and has a "boys club."  Doc. 36-1 at 75–80, 275 (Morgan Dep. 74:1–79:25, 274:5–16).  And Deputy Chief Wilburn testified that she has challenged Chief Donchez when he has made attempts at gender-related humor.  Doc. 36-3 at 54–55 (Wilburn Dep. 53:17–54:11).

### C.  Plaintiff Tirsa Otero

Plaintiff Tirsa Otero has worked for defendant's Police Department since 2001.  Doc. 29 at 3 (Pretrial Order ¶ 2.a.5.).  Defendant never has disciplined plaintiff Otero during her 21 years of employment there.  Doc. 36-2 at 194 (Otero Dep. 193:19–23).  In 2018, defendant awarded plaintiff Otero "Supervisor of the Year."  *Id.* at 165–66 (Otero Dep. 164:21–165:7).

Plaintiff Otero is a 53-year-old woman of Puerto Rican decent.  Doc. 33-18 at 2 (Otero Dep. 8:4–13, 9:16–17).  She was born in 1968.  *Id.* (Otero Dep. 8:8–9); *see also* Doc. 36-10 at 2 (Otero Decl. ¶ 2).

Defendant promoted plaintiff Otero many times during her employment, most recently to Captain in October 2021.  Doc. 33-1 at 2 (Sanders Decl. ¶ 14).  In 2016, plaintiff Otero

completed a Bachelor's of Science Degree in Business Management.  Doc. 33-2 at 4, 55 (Donchez Decl. ¶ 40 & Attach. 16).  Plaintiff Otero's native language is Spanish, and she speaks English with an accent.  Doc. 33-5 at 11 (Happer Dep. 61:25–62:12).  Defendant's Police Chief Donchez testified that defendant values plaintiff Otero's bilingual skills and pays her an annual financial bonus based on her ability to serve as a translator.  Doc. 33-2 at 4 (Donchez Decl. ¶ 36).

### Plaintiff Otero's Application for Promotion to Captain in 2020

On March 2, 2020, Chief Donchez announced a promotional process for Captain.  Doc. 33-2 at 4 (Donchez Decl. ¶ 37).  At the beginning of the 2020 Captain promotional process, plaintiff Otero held the rank of Police Sergeant—a rank she had held since 2012.  Doc. 29 at 3 (Pretrial Order ¶ 2.a.7.).  Before the 2020 Captain promotional process, plaintiff Otero had served as a patrol officer, field training officer, personnel detective, Community Police Sergeant, and Patrol Sergeant.  Doc. 33-19 at 1–2 (Otero Resume).  When plaintiff Otero applied for the 2020 Captain promotion, it was her fourth attempt at promotion to the rank of Captain.  Doc. 33-18 at 20–22 (Otero Dep. 149:9–156:14).

### 2020 Captain Promotional Process – Application and Qualifications

The 2020 Captain promotional process consisted of the following components: submitting a resume and letter of intent; Captains' roundtable; and Final Interview Panel and Role Play Scenario.  Doc. 33-2 at 4 (Donchez Decl. ¶ 38).  Six then-Sergeants competed for the promotion.  *Id.* (Donchez Decl. ¶ 39).  The six applicants included:  (1) then-Sergeant Otero, (2) then-Sergeant Keith Hruska, (3) then-Sergeant Richard Breshears, (4) Sergeant Gary Mason, (5) Sergeant Ryan Parrish, and (6) Sergeant William Vennart.  *Id.*

Keith Hruska was born in 1979 and has served as an officer in defendant's Police Department since 2001 and as a Sergeant since 2017.  Doc. 33-1 at 2 (Sanders Decl. ¶ 15).

23

Hruska has a Bachelor's Degree in Criminal Justice.  Doc. 33-2 at 4, 52 (Donchez Decl. ¶ 40 & Attach. 14).  When Hruska applied for the 2020 Captain promotion, he had served as a patrol officer, field training officer, traffic safety officer, detective in the Professional Standards Unit, Patrol Sergeant, and Traffic Safety Sergeant.  Doc. 33-2 at 4, 52 (Donchez Decl. ¶ 40 & Attach. 14).

Richard Breshears was born in 1985 and has served as an officer in defendant's Police Department since 2006 and as a Sergeant since 2016.  Doc. 33-20 at 2–3, 4 (Breshears Dep. 8:2–10:1, 17:8–16).  Breshears completed an Associate's Degree in Criminal Justice in 2004 and a Bachelor's Degree in Criminal Justice in 2007.  *Id.* at 2–3 (Breshears Dep. 8:2–10:1).  When Breshears applied for the 2020 Captain promotion, he had completed credits toward a Master's of Public Administration Degree.  *Id.*

Ryan Parrish was born in 1973 and has served as an officer in defendant's Police Department since 2001 and as a Sergeant since 2013.  Doc. 33-1 at 2 (Sanders Decl. ¶ 16).  Before joining defendant's Police Department, Parrish had served five years in the United States Air Force and completed college credits in General Studies and Aviation and Criminal Justice.  Doc. 33-2 at 4, 59–60 (Donchez Decl. ¶ 40 & Attach. 17).

Gary Mason was born in 1966 and has served as an officer in defendant's Police Department since 2003 and as a Sergeant since 2015.  Doc. 33-1 at 2 (Sanders Decl. ¶ 17).  Mason completed a Bachelor's Degree in Business Administration in 1992 and a Master's of Business Administration Degree in 1995.  Doc. 33-2 at 4, 54 (Donchez Decl. ¶ 40 & Attach. 15).

Bill Vennart was born in 1985 and has served as an officer in defendant's Police Department since 2006 and as a Sergeant since 2016.  Doc. 33-1 at 2 (Sanders Decl. ¶ 18).  In 2013, Vennart completed a Bachelor's Degree in Crisis and Disaster Management.  Doc. 33-2 at

4, 62 (Donchez Decl. ¶ 40 & Attach. 18).  When Vennart applied for the 2020 Captain

promotion, he had completed credits toward a Master's Degree in Public Affairs with an

expected completion date of December 2020.  *Id.*

All candidates in the 2020 Captain process other than plaintiff Otero were white men who

were about the same age as plaintiff Otero or younger.  Doc. 33-18 at 19 (Otero Dep. 131:19–

23).  Each of the Sergeants who applied for the 2020 Captain promotion met defendant's

minimum years of service and years in rank qualifications for promotion.  Doc. 33-2 at 4

(Donchez Decl. ¶ 41).

Because of the onset of the COVID-19 pandemic, defendant delayed the 2020 Captain

promotional process until June 2020.  Doc. 33-20 at 4 (Breshears Dep. 19:18–22).

### *2020 Captains' Roundtable*

As part of the 2020 Captain promotional process, defendant's current Captains held a

roundtable discussion about the candidates.  Doc. 33-21 at 1 (Miller Decl. ¶ 2).  Captain Todd

Chappell, the Captain over the Police Department's Personnel unit, facilitated this discussion.

Doc. 33-8 at 4 (Tisinger Dep. 13:8–14:7).  Plaintiff Otero testified that candidates in the

promotional process do not attend the roundtable but they do receive feedback from this step

once the promotional process concludes.  Doc. 33-18 at 6 (Otero Dep. 39:3–14).

During the roundtable discussion for the 2020 Captain promotional process, the Captains

discussed the strengths and weaknesses of each candidate individually.  Doc. 33-8 at 5, 6

(Tisinger Dep. 23:5–24, 27:8–14).  According to several participants in the roundtable

discussion, the group never discussed age, gender, race, or national origin of any candidates.

Doc. 33-6 at 35–36 (Morgan Dep. 241:9–242:1); Doc. 33-8 at 8–9 (Tisinger Dep. 36:16–37:2);

Doc. 33-21 at 1 (Miller Decl. ¶ 3).  Captain Ryan Miller attests that the participants in the

roundtable discussion never discussed plaintiff Otero's accent.  Doc. 33-21 at 1 (Miller Decl. ¶ 3).  But, others testified that plaintiff Otero's accent was something discussed within the Police Department.  *See* Doc. 36-1 at 238 (Morgan Dep. 237:5–11) (testifying that plaintiff Morgan had heard comments that plaintiff Otero was "hard to understand"); Doc. 36-3 at 49 (Wilburn Dep. 48:13–25) (testifying that Deputy Chief Wilburn had heard others in the Police Department, including supervisors, discussing plaintiff's accent); Doc. 36-8 at 72–73 (Happer Dep. 71:10–72:4) (testifying that Deputy Chief Happer has told plaintiff Otero that "sometimes when she is nervous or speaking quickly her accent comes in and it makes it difficult to understand"); Doc. 36-6 at 49–50 (Miller Dep. 48:18–49:2) (testifying that "over the years" he has heard "a handful of people" discuss plaintiff Otero's accent, "especially when she gets nervous or if she gets irritated" because then "it's a little bit hard to understand").

After the roundtable discussion, each Captain individually ranked the candidates from 1 (first choice for promotion) to 6 (last choice for promotion) and submitted their rankings by email to Captain Chappell.  Doc. 33-21 at 1 (Miller Decl. ¶ 4); Doc. 33-5 at 3, 4 (Happer Dep. 20:19–23, 21:5–13).  Captain Chappell then consolidated the rankings and shared them with the Final Interview Panel.  Doc. 33-21 at 1 (Miller Decl. ¶ 4).

After averaging the Captains' rankings, the candidates ranked in this order:  (1) Sergeant Ryan Parrish; **(2) then-Sergeant Otero**; (3) Sergeant Gary Mason; (4) then-Sergeant Keith Hruska; (5) then-Sergeant Richard Breshears; and (6) Sergeant Bill Vennart.[6]  Doc. 33-22 (Rankings Spreadsheet).  On average, the Captains' roundtable ranked the candidates in this order:

       (1) Parrish (1.46);
       (2) **Otero (2.31)**;
       (3) Mason (2.85);

---

[6]      The court bolds plaintiff Otero's rank to reference more easily her placement in the ranks.

    (4) Hruska (4.23);
    (5) Breshears (5.0);
    (6) Vennart (5.15).

*Id.* at 3.  The Captains' rankings were advisory in nature, and did not receive a specific weight in

the promotional process.  Doc. 33-2 at 4 (Donchez Decl. ¶ 42); Doc. 33-5 at 3 (Happer Dep.

17:25–18:5).

### *2020 Captain's Promotional Process Final Interview Panel and Role Play*

    On July 13, 2020, each candidate for Captain participated in a role play and interview

with the 2020 Captains' Final Interview Panel.  Doc. 33-2 at 4 (Donchez Decl. ¶ 43).  The

members of the Captains' Final Interview Panel were Chief Donchez, Deputy Chief Happer,

Deputy Chief Wilburn, PLA Blevins, Major Miller, Major Kelly, Major Jenkins, and Major

Houston.  *Id.*  The role playing activity involved a scenario the candidates could encounter as a

Captain.  *Id.* (Donchez Decl. ¶ 44).  Plaintiff Otero testified that she did not recall anything

discriminatory about the role play or comments made during the role play.  Doc. 36-2 at 48

(Otero Dep. 47:9–21).  But, she also testified that she believes the members of the Final

Interview Panel have "some preconceived notions of who they want to promote."  *Id.* at 47

(Otero Dep. 46:1–6).

    According to Chief Donchez, each member of the Final Interview Panel evaluated the

candidates' performance during the role play in the following categories:  oral communication

skills; subject matter presentation; Q&A response, and overall effectiveness in the role play

portion of the interview.  Doc. 33-2 at 4 (Donchez Decl. ¶ 45).

    All eight members of the Final Interview Panel rated Hruska as "highly effective" in all

four categories.  *Id.* at 4, 67 (Donchez Decl. ¶ 46 & Attach. 19).  Breshears received 19 "highly

effective" ratings and 13 "moderately effective" ratings.  *Id.* at 4, 72 (Donchez Decl. ¶ 47 &

Attach. 20).  Plaintiff Otero received five "highly effective" ratings, 26 "moderately effective" ratings, and one "improvement needed" rating.  Doc. 33-23 at 4 (Otero Promotional Process Summary).

The Final Interview Panel also conducted traditional interviews with each candidate. Doc. 33-2 at 4 (Donchez Decl. ¶ 48).  When ranking the candidates, Chief Donchez considered the following factors:  work history with the Police Department, competency, "potential" for promotion to higher ranks, performance during the final interview, and performance during roundtables and other panels.  Doc. 33-4 at 2–3 (Donchez Dep. 23:2–10, 23:20–24:6, 25:4–25). When ranking the candidates, Deputy Chief Wilburn considered the following factors:  interview performance, experience, leadership ability, education, overall competency, and potential of moving forward in the Department.  Doc. 33-3 at 3, 5 (Wilburn Dep. 23:21–24:12, 38:21–39:21). When ranking the candidates, PLA Blevins considered the following factors:  years of experience, years in rank, diversity of experience within the department, education, evidence of leadership ability, performance on the job, ability to be promoted to the rank of Major, performance during the Captains' roundtable, and performance during the final interview and role play scenario.  Doc. 33-12 at 2 (Blevins Decl. ¶ 11).  When ranking the candidates, Major Miller considered the following factors:  prior work performance, performance during the 2020 Captain promotion process, feedback from the Captains' roundtable, education, experience, and ability to be promoted to the rank of Major.  Doc. 33-21 at 1 (Miller Decl. ¶ 6).  When ranking the candidates, Major Houston considered the following factors:  years of service, years in rank, evidence of leadership ability, performance on the job, ability to be promoted to the rank of Major, performance during the Captains' roundtable, and performance during the final interview and role play scenario.  Doc. 33-9 at 2 (Houston Decl. ¶ 9).  When ranking the candidates, Major

Jenkins considered the following factors:  performance during the final interview and role play; organization; communication; relationship building; preparedness for the 2020 Captain process; potential for success as a Captain and future Major; ability to work with Captains, Majors, and Deputy Chiefs; and feedback from the Captains' roundtable.  Doc. 33-10 at 2 (Jenkins Decl. ¶ 9).

When considering which factors to emphasize, Chief Donchez, Deputy Chief Happer, Deputy Chief Wilburn, Major Miller, Major Houston, and Major Jenkins used their experience with the Department, knowledge of the position's job requirements, and experience supervising the Department's Captains.  Doc. 33-2 at 4 (Donchez Decl. ¶ 49); Doc. 33-7 at 3 (Happer Decl. ¶ 22); Doc. 33-11 at 2 (Wilburn Decl. ¶ 10); Doc. 33-21 at 1–2 (Miller Decl. ¶ 7); Doc. 33-10 at 2 (Jenkins Decl. ¶ 10); Doc. 33-9 at 2 (Houston Decl. ¶ 10).  When considering which factors to emphasize, PLA Blevins used his experience serving as legal advisor to the Department and knowledge of the position's job requirements.  Doc. 33-12 at 2 (Blevins Decl. ¶ 12).  Defendant doesn't require service in a specified number of units within the Department for promotion to Captain.  Doc. 33-2 at 5 (Donchez Decl. ¶ 52).

During the final interview and role play scenario, no one made any questions or comments about the candidates' age, sex, race, or national origin.  Doc. 33-18 at 7 (Otero Dep. 47:9–21); Doc. 33-2 at 5 (Donchez Decl. ¶ 50); Doc. 33-7 at 3 (Happer Decl. ¶ 23); Doc. 33-11 at 2 (Wilburn Decl. ¶ 11); Doc. 33-21 at 2 (Miller Decl. ¶ 8); Doc. 33-10 at 2 (Jenkins Decl. ¶ 11); Doc. 33-9 at 2 (Houston Decl. ¶ 12).  Also, members of the Final Interview Panel testified that they did not discuss plaintiff Otero's accent.[7]  Doc. 33-2 at 5 (Donchez Decl. ¶ 51); Doc. 33-7 at 3 (Happer Decl. ¶ 24); Doc. 33-11 at 2 (Wilburn Decl. ¶ 12); Doc. 33-12 at 2 (Blevins Decl.

---

[7]       But, as already discussed, some witnesses testified that plaintiff Otero's accent was something discussed within the Police Department.  *See* Doc. 36-1 at 238 (Morgan Dep. 237:5–11); Doc. 36-3 at 49 (Wilburn Dep. 48:13–25); Doc. 36-8 at 72–73 (Happer Dep. 71:10–72:4); Doc. 36-6 at 49–50 (Miller Dep. 48:18–49:2).

¶ 14); Doc. 33-21 at 2 (Miller Decl. ¶ 9); Doc. 33-10 at 2 (Jenkins Decl. ¶ 12); Doc. 33-9 at 2 (Houston Decl. ¶ 13).

After the interviews, each member of the Final Interview Panel individually evaluated the candidates' performance in the role playing scenario and interview and separately ranked the candidates from 1 (first choice for promotion) to 6 (last choice for promotion). Doc. 33-4 at 14–15 (Donchez Dep. 92:12–93:1). The Final Interview Panel members then submitted their rankings separately to Chief Donchez or his assistant by email. *Id.* Each member of the Final Interview Panel has an equal vote in the ranking process. *Id.* at 2 (Donchez Dep. 21:16–25).

The Final Interview Panel members gave then-Sergeant Hruska five first-place rankings, two third-place rankings, and one fourth-place ranking. Doc. 33-22 at 1; Doc. 33-9 at 2–3 (Houston Decl. ¶ 11 & Attach. 1). They gave then-Sergeant Breshears four second-place rankings, one third-place ranking, and three fourth-place rankings. *Id.* They gave plaintiff Otero one second-place ranking, one third-place ranking, and the other six panel members ranked her either fourth or fifth. *Id.* On average, the Final Interview Panel ranked the candidates in this order:

> (1) Hruska (1.875);
> (2) Breshears (2.875);
> (3) Vennart (2.875);
> (4) Parrish (3.25);
> (5) **Otero (4.125)**;
> (6) Mason (6.0).

*Id.*[8]

---

[8]     Defendant calculates these averages based on the rankings found in the Captain rankings sheet and Major Houston's Declaration. *See* Doc. 33-22 at 1; Doc. 33-9 at 2–3 (Houston Decl. ¶ 11 & Attach. 1). Plaintiffs don't dispute this statement of fact.

***Defendant Promotes Hruska to Captain***

On July 19, 2020, Chief Donchez promoted Keith Hruska to Captain.  Doc. 33-4 at 5 (Donchez Dep. 42:17–19).

When evaluating candidates for promotion to Captain within defendant's Police Department, plaintiff Otero believes the following considerations are relevant:  tenure and experience, time in rank, education, any training, attendance at command schools, performance, work that exceeds what other people have done, lack of discipline, experience serving in a variety of roles within the Police Department, the assessment of fellow Captains, the assessment of Majors, verbal communication skills, oral presentation skills, having an understanding of issues facing the Police Department, the ability to interact well with the public, having good working relationships with subordinates and colleagues, potential to serve in even higher leadership roles with defendant, prior evaluations, respect for chain of command, and commitment to the department.  Doc. 33-18 at 3 (Otero Dep. 18:11–21:2).  Plaintiff Otero recognizes that reasonable people in leadership positions could disagree about the appropriate weight to give these factors when evaluating candidates for promotion.  *Id.* at 3, 4 (Otero Dep. 21:7–14, 23:16–19, 24:6–19).  But also, she testified, some factors calling for a subjective evaluation of a candidate may permit an evaluator to discriminate against the candidate.  *Id.* Specifically, plaintiff Otero believes requiring the Final Interview Panel to rank the candidates is discriminatory because it is subjective and allows the evaluators to pick the candidates they want for promotion.  *Id.* at 15 (Otero Dep. 111:5–16).  Deputy Chief Wilburn also testified that some criteria defendant used when making promotion decisions was subjective, and she agreed that "the greater the degree of subjectivity" in a promotional process "the greater the chance" there is

"for bias to enter into the decision making process[.]"  Doc. 36-3 at 29–30 (Wilburn Dep. 28:3–29:13).

### *Plaintiff Otero's Meeting with Captain Tisinger and Major Houston*

On July 27, 2020, plaintiff Otero met with Captain Tisinger and Major Houston—her direct and next-level supervisor—to discuss her performance in the promotional process.  Doc. 33-18 at 9 (Otero Dep. 69:8–14); Doc. 33-24 at 2 (Otero Notes).  During this meeting, Major Houston and Captain Tisinger provided plaintiff Otero a written summary of the Captains' feedback from the roundtable, her ranking from the Captains' roundtable, and a summary of the comments and rankings of her performance during the role playing and interview.  Doc. 33-18 at 9–10 (Otero Dep. 69:15–70:14); Doc. 33-24 at 2 (Otero Notes).

Plaintiff Otero believes the comments on her final interview and role play are discriminatory because they are subjective in nature, inconsistent with feedback she received about her performance in prior promotional processes, and that the comment about her being difficult to understand is a reference to her race and national origin.  Doc. 33-18 at 10 (Otero Dep. 71:18–73:6).  The comment about plaintiff Otero being difficult to understand contained in the promotional process feedback originally came from Deputy Chief Happer's interview notes. Doc. 33-7 at 3 (Happer Decl. ¶ 25).  After the interviews, Major Miller compiled the Final Interview Panel members' feedback into a summary—which, for plaintiff Otero, included the "difficult to understand" comment.  Doc. 33-21 at 2 (Miller Decl. ¶ 10).  Deputy Chief Happer testified that when plaintiff Otero gets nervous or starts speaking quickly, her accent is more pronounced and it becomes more difficult for him to understand her.  Doc. 33-5 at 11 (Happer Dep. 61:15–24).

Also during the meeting with Major Houston and Captain Tisinger, plaintiff Otero complained that she believed the Final Interview Panel made its entire decision based on the candidates' performance during their final interviews and role plays. Doc. 33-24 at 3 (Otero Notes).

### Breshears Promoted to Acting Captain

In August 2020, defendant had an opening for an Acting Captain while one of its Captains attended a three-month-long educational opportunity. Doc. 33-2 at 5 (Donchez Decl. ¶ 53). Based on Sergeant Breshears' second-place finish with the Final Interview Panel and his recent exceptional work coordinating the funeral for a fallen Overland Park police officer, Chief Donchez temporarily promoted Breshears to the rank of Acting Captain.[9] *Id.* (Donchez Decl. ¶ 54). According to plaintiff Otero, however, Breshears had "a history of performance issues[.]" Doc. 36-10 at 3 (Otero Decl. ¶ 6). But, despite Breshears's performance record, Chief Donchez promoted Breshears to Acting Captain. *Id.* Also, plaintiff Morgan testified that she told Chief Donchez that Breshears "treats people like crap[.]" Doc. 36-1 at 159 (Morgan Dep. 158:9–12). And, plaintiff Otero testified that she had trained Breshears and thought he was "impulsive" and didn't "think[ ] things through[.]" Doc. 36-2 at 30–31 (Otero Dep. 29:7–30:23).

### Plaintiff Otero's Post-Promotional Process Meeting with Deputy Chief Wilburn, Chief Donchez, and Deputy Chief Happer

On August 19, 2020, plaintiff Otero met with Deputy Chief Wilburn to discuss her performance during the promotional process. Doc. 33-18 at 11, 12 (Otero Dep. 89:14–17, 92:11–16); Doc. 33-24 at 4–6 (Otero Notes). Deputy Chief Wilburn discussed with plaintiff Otero her need for additional exposure to Senior Command (the Chief, Deputy Chiefs, and

---

[9]     Breshears testified that when Chief Donchez told him that defendant was promoting him to Acting Captain, Chief Donchez told him that "there is no ranking" and "there was no number 2" in the promotional process. Doc. 36-7 at 31 (Breshears Dep. 30:3–24).

Majors) and the possibility of transferring to a more high-profile unit.  Doc. 33-24 at 5–6 (Otero

Notes).  But, plaintiff Otero disagreed that she needed more exposure to Senior Command and

declined the possible transfer.  *Id.* at 6.

Deputy Chief Wilburn testified that the purpose of her suggestions to plaintiff Otero was

to provide her with feedback about how to improve in future promotional processes and had

nothing to do with any protected status.  Doc. 33-11 at 2 (Wilburn Decl. ¶ 13).  Also, during their

discussion on August 19, 2020, plaintiff Otero didn't raise any concerns about age, gender, race,

or national origin discrimination.  *Id.* (Wilburn Decl. ¶ 14); Doc. 33-18 at 13 (Otero Dep. 95:8–

25).

On August 24, 2020, plaintiff Otero met with Chief Donchez to discuss her performance

in the promotional process.  Doc. 33-18 at 12 (Otero Dep. 92:21–93:8); Doc. 33-24 at 6 (Otero

Notes).  Plaintiff Otero shared her belief that she was the most qualified candidate for promotion

and that she believed defendant should have promoted her in 2019 over Captain Steve Edwards.

*Id.*  In this particular meeting with Chief Donchez, plaintiff Otero did not raise any concerns

about age, gender, race, or national origin discrimination.  Doc. 33-18 at 13 (Otero Dep. 95:8–

25); Doc. 33-2 at 5 (Donchez Decl. ¶ 55).  But, she did complain that she thought the

promotional process was "unfair" and asked for "fair and equal treatment."  Doc. 33-18 at 13

(Otero Dep. 95:8–25).

Also on August 24, 2020, plaintiff Otero met with Deputy Chief Happer to discuss her

performance in the promotional process.  *Id.* at 13 (Otero Dep. 94:2–11); Doc. 33-24 at 7 (Otero

Notes).  Deputy Chief Happer told plaintiff Otero the initial portion of her presentation needed

work, but that the rest was great.  Doc. 33-24 at 7 (Otero Notes).  Also, Deputy Chief Happer

explained to plaintiff Otero that he considers everything a candidate submits as part of the application process when evaluating the candidate for promotion. *Id.*

Plaintiff Otero believes she was more qualified then now-Captain Hruska. Doc. 33-18 at 5 (Otero Dep. 27:6–29:2). She testified that defendant hired her and Hruska about the same time. *Id.* But, plaintiff Otero had more years in rank as a Sergeant, and she believes she worked in more areas within the Department than Hruska. *Id.* Also, plaintiff testified that Hruska's application for Captain was his first attempt at promotion to that rank. *Id.*

### Plaintiff Otero's Initial Charge of Discrimination

On September 6, 2020, plaintiff Otero dual-filed a Charge of Discrimination with the EEOC and KHRC. Doc. 33-25 (Charge of Discrimination). It alleged age, sex, race, and national origin discrimination based on her belief that she had performed her duties as well or better than similarly situated, younger Caucasian male employees who received promotions, including the one awarded in 2020. *Id.* In the 300 days preceding plaintiff Otero's filing of her Charge of Discrimination, Keith Hruska was the only member of defendant's Police Department promoted to the rank of Captain. Doc. 33-2 at 5 (Donchez Decl. ¶ 56).

### Breshears Formally Promoted to Captain

On November 8, 2020, defendant promoted Richard Breshears to Captain. Doc. 33-4 at 7 (Donchez Dep. 59:18–25). Chief Donchez promoted Breshears to Captain the same day that defendant promoted Captain Fitzgerald to Acting Major. *Id.* (Donchez Dep. 57:3–22). Chief Donchez knew that, for the next six months, either Captain Fitzgerald or plaintiff Morgan would serve as an Acting Major and that afterwards, he would promote one of them to Major. *Id.* And, that promotion to Major would create a permanent Captain opening. *Id.*

Chief Donchez testified that he selected Breshears for the Captain position because of his strong performance in the promotional process, his recent exceptional work on the funeral of a fallen officer, and his good work during his time as an Acting Captain. *Id.* at 7, 15 (Donchez Dep. 58:1–18, 93:2–13).

Plaintiff Otero testified that, historically, Captain candidates who are placed in an extended Acting Captain role following a promotional process generally receive the next available Captain promotion. Doc. 33-18 at 16–17 (Otero Dep. 117:20–118:6). And, she testified that she believes defendant "already had it in their mind who was going to get promoted" before she filed her EEOC Charge. *Id.* at 19 (Otero Dep. 132:14–19).

### *Plaintiff Otero's Amended Charge of Discrimination*

On November 24, 2020, plaintiff Otero filed an Amended Charge of Discrimination. Doc. 33-26 (Amended Charge of Discrimination). It alleged additional claims of retaliation and age, sex, race, and national origin discrimination based on defendant's decision to promote Richard Breshears to Captain. *Id.*

Plaintiff Otero believes defendant's decision to promote Breshears was retaliatory because defendant promoted him after she filed her initial Charge. Doc. 33-18 at 19 (Otero Dep. 131:9–18). Plaintiff Otero believed she was more qualified than now-Captain Breshears because she had more years of service, more time in rank of Sergeant, and it was Breshears's first attempt at promotion to the rank of Captain. *Id.* at 5 (Otero Dep. 29:7–19).

### *2021 Captain Promotional Process*

On June 9, 2021, defendant announced the opening of another promotional process for the rank of Captain. Doc. 33-2 at 5 (Donchez Decl. ¶ 57). For that opening, only three Sergeants applied. *Id.* The three applicants were plaintiff Otero, Sergeant Zach Stephens, and Sergeant

36

Gary Mason. *Id.* Sergeant Stephens and Sergeant Mason are both white men. Doc. 33-1 at 2 (Sanders Decl. ¶ 19). Sergeant Stephens is younger than plaintiff Otero. *Id.* And Sergeant Mason is two years older than plaintiff Otero. *Id.*

Plaintiff Morgan was a member of the Final Interview Panel for the 2021 Captain promotional process. Doc. 36-1 at 254–56 (Morgan Dep. 253:17–256:19). She testified that Sergeant Stephens had a "terrible" interview and was "rattled[.]" *Id.* But Chief Donchez and Major Jenkins disagreed. *Id.* Chief Donchez ranked Sergeant Stephens as his top candidate for promotion. *Id.*; *see also* Doc. 39 at 14 (conceding in defendant's Reply that "Chief Donchez did rank Sergeant Stephens as his top candidate for promotion").

But, at the end of the 2021 Captain promotional process, plaintiff Otero was the highest-rated candidate among the Final Interview Panel members. Doc. 33-2 at 5 (Donchez Decl. ¶ 58); *see also* Doc. 36-1 at 260 (Morgan Dep. 259:19–23).

### *Plaintiff Otero Promoted to Captain*

On August 8, 2021, defendant promoted plaintiff Otero temporarily to the rank of Acting Captain while another Captain attended a months-long educational opportunity. Doc. 33-18 at 18 (Otero Dep. 123:2–11). Then, in October 2021, defendant formally promoted plaintiff Otero to Captain. *Id.* (Otero Dep. 123:17–24).

## II.    Summary Judgment Standard

The standard for deciding summary judgment under Federal Rule of Civil Procedure 56 is a familiar one. Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When it applies this standard, the court views the evidence and draws inferences in the light most

favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And, an issue of fact is "material" if it has the ability to "affect the outcome of the suit under the governing law[.]" *Id.*

The party moving for summary judgment bears the initial burden of showing "the basis for its motion[.]" *Celotex*, 477 U.S. at 323. A summary judgment movant can satisfy this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party satisfies its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted). To satisfy this requirement, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation and internal quotation marks omitted). When deciding whether the parties have shouldered their summary judgment burdens, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Summary judgment is not a "disfavored procedural shortcut[.]" *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.     Analysis

Defendant argues that it deserves summary judgment because the facts present no genuine dispute whether it unlawfully discriminated or retaliated against either plaintiff Morgan

or plaintiff Otero.  Defendant asserts several arguments supporting summary judgment.  The

court addresses each, in turn, below.

### A.  Administrative Exhaustion

*First*, defendant argues that the court should grant summary judgment against any claim

plaintiffs assert for discrimination or retaliation occurring more than 300 days before they filed

their EEOC Charges of Discrimination.  Defendant correctly asserts that plaintiffs must exhaust

their administrative remedies by timely-filing a charge of discrimination with the EEOC or state

administrative agency before filing a Title VII or ADEA claim in court.  *See Lincoln v. BNSF Ry.*

*Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) ("A plaintiff normally may not bring a Title VII

action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff

has received a right-to-sue-letter." (citation and internal quotation marks omitted)); *see also*

*Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011) (explaining that the

ADEA "provides that 'no civil action may be commenced' in federal court unless the would be

plaintiff first files a grievance with the appropriate administrative agency" (quoting 29 U.S.C. §

626(d)(1)(B))).  And, when an employee dual-files a charge of discrimination with the EEOC

and a state administrative agency, as plaintiffs did here, Title VII and the ADEA require the

employee to file the charge of discrimination within 300 days of the alleged unlawful

discrimination or retaliation.  42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1)(B)

(ADEA); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002)

(explaining that a "discrete retaliatory or discriminatory act occurred on the day that it happened"

and a plaintiff "therefore, must file a charge within . . . 300 days of the date of the act or lose the

ability to recover for it" (internal quotation marks omitted)).

Here, defendant argues, plaintiffs cannot assert any claims for promotion decisions occurring more than 300 days before they filed their Charges of Discrimination or promotion decisions not included in the subject matter of their Charges.  For plaintiff Morgan, defendant asserts that she cannot bring a claim based on any promotion decisions occurring on or before October 23, 2019 (more than 300 days before she filed her Charge of Discrimination on August 18, 2020).  And, for plaintiff Otero, defendant contends that she cannot assert a claim based on any promotional decisions occurring on or before November 11, 2019 (more than 300 days before she filed her Charge of Discrimination on September 6, 2020).

Plaintiffs' Opposition doesn't respond to this argument.  *See generally* Doc. 36.  Thus, the court finds, plaintiffs concede that they cannot assert any claims based on alleged discriminatory or retaliatory acts occurring more than 300 days before they filed their Charges of Discrimination.  *See Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming dismissal of plaintiff's equal protection claim after district court concluded that plaintiff had abandoned claim because he had not addressed it in his memorandum opposing summary judgment); *Fullen v. City of Salina, Kan.*, No. 21-4010-JAR-TJJ, 2021 WL 4476780, at *14 (D. Kan. Sept. 30, 2021) (dismissing plaintiffs' claim because they "tacitly concede[d]" that they had failed to state a plausible claim "by failing to respond to" defendants' dismissal arguments).  As a consequence of this principle, the court grants summary judgment against any discrimination or retaliation claims occurring more than 300 days before plaintiffs filed their EEOC Charges of Discrimination—to the extent plaintiffs assert such claims.

## B.  Pattern-or-Practice Claim

*Next*, defendant argues that plaintiffs' discrimination and retaliation claims are based on discrete incidents and can't form the basis of a "patten-or-practice claim."  Defendant cites

plaintiffs' Petition where plaintiffs alleged that defendant's "discriminatory treatment of plaintiffs . . . represents a pattern and/or practice of discriminatory treatment toward individuals" in protected classes.  Doc. 1-1 at 2 (Pet. ¶ 8).  But, the Pretrial Order contains no pattern-or-practice claim by plaintiffs.  Doc. 29 at 10–12 (Pretrial Order ¶ 4.a.).  The Pretrial Order now controls the action and "supercedes the pleadings."  *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007); *see also Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[T]he pretrial order is the controlling document for trial." (citation and internal quotation marks omitted)).  Thus, plaintiffs have abandoned any pattern-or-practice claim by failing to include it in the Pretrial Order.  *See Wilson*, 303 F.3d at 1215 (explaining that "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint"); *see also Berry v. Gen. Motors Corp.*, No. 88-2570-JWL, 1993 WL 105128, at *2 (D. Kan. Mar. 17, 1993) (holding that "the pretrial order abandons that defense by failing to mention it").

Also, plaintiffs' Opposition doesn't respond to defendant's argument for summary judgment against a pattern-or-practice claim.  *See generally* Doc. 36.  Nevertheless, even if plaintiffs had included a pattern-or-practice claim in the Pretrial Order our Circuit has held that "individual plaintiffs . . . may not bring pattern-or-practice claims."  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 633 (10th Cir. 2012).  Governing precedent holds that plaintiffs—as individuals suing for discrete acts of alleged unlawful discrimination and retaliation—can't assert a pattern-or-practice claim.  *See id.* (holding that individual plaintiff was barred from raising a pattern-or-practice claim).  The court thus grants summary judgment against any pattern-or-practice claim—to the extent plaintiffs still assert such a claim.

### C.  Plaintiff Morgan's Discrimination and Retaliation Claims

*Next*, defendant asserts that it deserves summary judgment against plaintiff Morgan's sex and age discrimination and retaliation claims.  The court begins with plaintiff Morgan's sex and age discrimination claims and then turns to her retaliation claims.

#### 1.  Sex and Age Discrimination Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]"  42 U.S.C. § 2000e-2(a)(1).  And, the ADEA prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"  29 U.S.C. § 623(a)(1).

Where, as here, plaintiffs have not alleged any direct evidence of discrimination, plaintiffs may use circumstantial evidence to prove discrimination under Title VII and the ADEA using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (Title VII claims); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002) (Title VII and ADEA claims).  The *McDonnell Douglas* framework involves a three-step analysis.  *Garrett*, 305 F.3d at 1216.

*First*, a plaintiff must provide a prima facie case of discrimination.  *Id.*; *see also Khalik*, 671 F.3d at 1192.  A prima face case of Title VII and ADEA discrimination in a failure to promote claim requires a plaintiff to come forward with a triable issue whether "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3) despite

being qualified she was rejected; and (4) after she was rejected, the position was filled by someone outside the protected class." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1277–78 (10th Cir. 2005), *overruled on others ground by Lincoln*, 900 F.3d at 1181 (ADEA claim); *see also Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003) (Title VII claim). *Second*, if plaintiff meets the prima facie burden, then the burden shifts to defendant to produce a legitimate, non-discriminatory reason for its employment action. *MacKenzie*, 414 F.3d at 1278; *Jones*, 349 F.3d at 1266. *Last*, if defendant satisfies that burden, the burden then shifts back to plaintiff to show that defendant's proffered reason for the employment action is pretext. *MacKenzie*, 414 F.3d at 1278; *Jones*, 349 F.3d at 1266.

Here, plaintiff Morgan alleges that (1) defendant's decision to promote Ryan Miller to Major over plaintiff Morgan in the 2020 Major promotional process was discriminatory based on her sex and age, and (2) defendant's decision to place plaintiff Morgan and Captain Fitzgerald in the Acting Major positions before promoting plaintiff Morgan to Major was discriminatory based on her sex and age. The court addresses each claim, separately, below.

### a. Defendant's Promotion of Ryan Miller to Major

Defendant doesn't challenge the first step in the *McDonnell Douglas* analysis—*i.e.*, whether plaintiff Morgan has come forward with summary judgment facts presenting a prima facie case of sex or age discrimination based on defendant's decision to promote Ryan Miller to Major over plaintiff Morgan. Instead, defendant merely argues that it deserves summary judgment under the second and third steps of the *McDonnell Douglas* analysis. Thus, for summary judgment purposes, the court assumes without deciding that plaintiff Morgan has satisfied the first step of the burden-shifting framework.

On the second step, defendant argues it has come forward with a legitimate, non-discriminatory reason for its decision to promote Miller to Major.  Our Circuit has explained that defendant, at the second step, doesn't "'need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion.'"  *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)).  "'[T]his stage of the analysis only requires the defendant to articulate a reason for the [employment decision] that is not, on its face, prohibited' and that is 'reasonably specific and clear.'"  *Id.* (first alteration in original) (quoting *Flasher*, 986 F.2d at 1316 & n.4).

Here, defendant asserts it promoted Miller to Major because—as the summary judgment facts establish—he performed substantially better in the 2020 Major promotional process than the other candidates, including his unanimous first place ranking from each member of the Final Interview Panel.  Defendant contends that this reason is a legitimate and non-discriminatory one.  Plaintiffs don't challenge defendant's assertion that it has come forward with a legitimate, non-discriminatory reason for its decision to promote Miller to Major.  *See generally* Doc. 36.  Instead, plaintiffs argue that a reasonable factfinder could find defendant's reasons for promoting Miller over plaintiff Morgan are pretextual.  *Id.* at 20–25.  The court concludes on the summary judgment record here that defendant has satisfied the second step of the *McDonnell Douglas* burden-shifting framework.  Thus, the court turns to the third step of the framework:  pretext.

At the third step, a "plaintiff can show pretext by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence

and hence infer that the employer did not act for the asserted non-discriminatory reason.'"
*Garrett*, 305 F.3d at 1217 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).
When analyzing the pretext question, the court doesn't "ask whether the employer's reasons
were wise, fair or correct[.]"  *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir.
2007).  Instead, "the relevant inquiry is whether the employer honestly believed its reasons and
acted in good faith upon them."  *Id.* at 1119.  So, the court considers "the facts as they appeared
to the person making the decision," and the court can't "second-guess the employer's decision
even if it seems in hindsight that the action taken constituted poor business judgment."  *Id.*
"'The reason for this rule is plain:  [the court's] role is to prevent intentional discriminatory
hiring practices, not to act as a "super personnel department," second guessing employers'
honestly held (even if erroneous) business judgments.'"  *Id.* (quoting *Young v. Dillon Cos.*, 468
F.3d 1243, 1250 (10th Cir. 2006)).

Plaintiff Morgan asserts six reasons that—she contends—defendant's decision to
promote Miller was pretext for sex and age discrimination.  The court addresses each of
plaintiff's pretext arguments, in turn, below.

### i.   Alleged Bias Against Promoting Women

*First*, plaintiff Morgan asserts that the summary judgment facts reveal a "strong bias
against women in the promotion of female officers within" defendant's ranks.  Doc. 36 at 21.  To
support this contention, plaintiff Morgan cites deposition testimony by Deputy Chief Wilburn
where she testified that she had more than one conversation with plaintiff Morgan "about the
challenges of being female in [the law enforcement] profession."  Doc. 36-3 at 52 (Wilburn Dep.
51:15–21).  And, she testified that women "have to work harder than many of the men in our
organization to be noticed."  *Id.* at 54 (Wilburn Dep. 53:2–16).  Deputy Chief Wilburn also

testified that she has challenged Chief Donchez when he has made attempts at gender-related humor and that she has "been subjected to derisive teasing by male colleagues" during her employment with defendant. *Id.* at 54–55 (Wilburn Dep. 53:17–54:11).[10]

Although Deputy Chief Wilburn's testimony speaks generally to challenges facing female police officers, it doesn't support a reasonable finding or inference that defendant has a "strong bias against women in the promotion of female officers within" defendant's ranks, as plaintiff Morgan contends. Doc. 36 at 21. Instead, the summary judgment facts show that, in the Major promotional processes that plaintiff Morgan has participated in, two of the five candidates promoted (Cindy Henson in 2016 and plaintiff Morgan in 2021) were women who were older than 45 years old. Doc. 33-1 at 2 (Sanders Decl. ¶ 13) (testifying that Henson was 47 years old when defendant promoted her to Major in 2016); Doc. 33-2 at 3 (Donchez Decl. ¶ 31) (testifying that defendant promoted plaintiff Morgan to Major in 2021). Also, Deputy Chief Wilburn testified that defendant promoted her to Major on her first application for promotion to that rank. Doc. 36-3 at 15–16 (Wilburn Dep. 14:20–15:9). These facts don't support a "strong bias" against promoting women. To the contrary, the summary judgment record contains several examples where defendant promoted women officers to higher ranks.

Also, Deputy Chief Wilburn's testimony about the challenges facing women officers doesn't support a finding or inference of bias specifically in the 2020 Major promotional process. Deputy Chief Wilburn testified that—as a member of both the 2020 Major Final Interview Panel and the 2020 Captain Final Interview Panel—she didn't observe any bias or discrimination in the

---

[10]     Deputy Chief Wilburn testified that this gender-related humor was not related to either plaintiff Morgan or plaintiff Otero and was not related to any promotional process. Doc. 39-1 at 1 (Wilburn Decl. ¶ 3).

promotional process.  Doc. 39-1 at 1 (Wilburn Decl. ¶ 2).  Also, she testified that she's not aware of any bias or discrimination in the promotional process.  *Id.*

As already noted, Deputy Chief Wilburn ranked Miller as her first choice for the promotion—as did every other member of the Final Interview Panel—and she ranked plaintiff Morgan as her third choice.  Doc. 33-11 at 1, 3 (Wilburn Decl. ¶ 5 & Attach. 1).  Deputy Chief Wilburn testified that, when ranking the candidates, she considered several factors, including: experience with the Department; prior performance; leadership ability; education; overall competency; potential of moving forward in the Department; and performance during the final interview.  Doc. 33-3 at 3, 5 (Wilburn Dep. 23:21–24:2, 38:21–39:21).  And, plaintiff Morgan conceded that she has no evidence to believe that Deputy Chief Wilburn discriminated against her in the hiring process.  Doc. 33-6 at 31 (Morgan Dep. 178:6–9).

Thus, Chief Deputy Wilburn's testimony doesn't present a jury question whether defendant's decision to promote Miller to Major in 2020 was pretext for discrimination based on plaintiff Morgan's sex.

### ii.    The Candidates' Qualifications

*Second*, plaintiff Morgan asserts that the summary judgment facts present a triable issue of pretext because she was the "top candidate for promotion" but, nevertheless, defendant promoted "male candidate, Ryan Miller."  Doc. 36 at 22.  Plaintiff cites her education, eight years serving as a Captain, strong work performance, and her involvement in three "prior promotional processes" as evidence of her superior qualifications.  *Id.* at 21.  But, none of the members of the Final Interview Panel testified that they considered the number of times a candidate had applied previously for promotion.  Instead, they testified that they considered factors such as education, experience and performance in the Department, and the candidates'

performance in various components of the promotional process.  *See supra* pp. 12–13.  And, plaintiff doesn't explain why the failure to consider a candidate's previous attempts at promotion is discriminatory based on sex or age.

Also, the summary judgment facts present no triable issue of pretext based on plaintiff Morgan's qualifications compared to Miller's.  Our Circuit has instructed it "'will draw an inference of pretext where the facts assure [the court] that the plaintiff is better qualified than the other candidates for the position.'"  *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 602 (10th Cir. 2014) (quoting *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007)).  But, a plaintiff can't establish a triable pretext issue by pointing to "'minor differences between plaintiff's qualifications and those of successful applicants[.]'"  *Conroy v. Vilsak*, 707 F.3d 1163, 1172 (10th Cir. 2013) (quoting *Santana*, 488 F.3d at 865) (affirming summary judgment against failure to promote claim where, among other things, plaintiff had failed to make a showing that she was more qualified).  Instead, "there must be 'an overwhelming merit disparity.'"  *Id.* (quoting *Santana*, 488 F.3d at 865); *see also Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211–12 (10th Cir. 2010) (explaining that "to suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an overwhelming disparity in qualifications" and affirming summary judgment against failure to hire claim where successful applicant's qualifications "were . . . certainly not overwhelmingly inferior to" plaintiff's (citation and internal quotation marks omitted)).

Here, plaintiff Morgan falls far short of showing "an overwhelming disparity" between her qualifications when compared to successful candidate Miller's.  She correctly asserts that she had slightly more education than Miller, having earned a Master's of Public Administration

48

Degree and completed credits toward a Master's of Criminal Justice Degree.  Doc. 33-6 at 4 (Morgan Dep. 34:21–35:6).  But, during the 2020 promotional process, Miller was working toward a Master's Degree in the Science of Management.  Doc. 33-2 at 2, 38 (Donchez Decl. ¶ 9 & Attach. 9).  And, another one of the male candidates—Captain Tisinger—had completed a Master's Degree, like plaintiff Morgan, but he wasn't selected for the promotion either.  Doc. 33-2 at 2, 45–46 (Donchez Decl. ¶ 9 & Attach. 12).

Also, while plaintiff Morgan had worked for defendant four years longer than Miller, and she was promoted to the rank of Captain three years before Miller, Doc. 33-1 at 1 (Sanders Decl. ¶ 6) (defendant has employed Miller since 1999 and promoted him to Captain in 2015), Doc. 29 at 3 (Pretrial Order ¶ 2.a.4.) (defendant has employed plaintiff Morgan since 1995), Doc. 29 at 3 (Pretrial Order ¶ 2.a.6.) (plaintiff Morgan was promoted to Captain in 2012), both candidates had the required 10 years of service with the department and Captain rank to qualify for the Major position, Doc. 33-2 at 2 (Donchez Decl. ¶ 11).  And, a candidate's tenure with the defendant was just one of many factors that Chief Donchez and other members of the Final Interview Panel considered when ranking the candidates.  *See supra* pp. 12–13.  Also, other male candidates in the 2020 Major promotional process had similar or more experience than plaintiff Morgan, but they too weren't promoted.  *See* Doc. 33-1 at 2 (Sanders Decl. ¶ 9) (Fitzgerald had served as an officer in the Police Department since 1989 and as Captain since 2007); *id.* (Sanders Decl. ¶ 10) (Sutterby had served as an officer in the Police Department since 1995 and as Captain since 2012); *id.* (Sanders Decl. ¶ 11) (Tisinger had served as an officer in the Police Department since 1997, and as Captain since 2016); Doc. 33-2 at 2, 45–46 (Donchez Decl. ¶ 9 & Attach. 12) (Tisinger also had 10 years of law enforcement experience before joining defendant's Police

Department); Doc. 33-1 at 1 (Sanders Decl. ¶ 7) (Burvee had served as an officer in the Police Department since 1994 and as a Captain since 2016).

Plaintiff Morgan also asserts that defendant promoted Miller, even though he has a disciplinary record and she doesn't.  Doc. 36-1 at 54–55, 198 (Morgan Dep. 53:15–25, 197:12–14); Doc. 36-4 at 74–75 (Donchez Dep. 73:23–74:5).  But this argument distorts the summary judgment record.  Plaintiff Morgan says Miller had "a record of discipline for having an accidental discharge."  Doc. 36 at 23.  But, that's not what the summary judgment record shows.  Instead, the summary judgment facts establish that Miller was disciplined for *his investigation* of an accidental discharge that occurred during a training in 2012—some eight years before the 2020 promotional process.  Doc. 36-4 at 69, 95 (Donchez Dep. 68:6–19, 94:5–19).  And, Chief Donchez testified he didn't consider Miller's 2012 discipline during the 2020 Major promotional process.  *Id.* at 95 (Donchez Dep. 94:5–19).

In sum, the summary judgment facts show that plaintiff Morgan was slightly stronger in certain categories that Chief Donchez and the Final Interview Panel considered when ranking the candidates.  But, plaintiff Morgan ignores that education, tenure, and disciplinary record weren't the only factors that Chief Donchez and the Final Interview Panel considered when ranking the candidates.  Instead, and as discussed in the undisputed facts, they considered many factors when ranking the candidates, including the candidate's performance in various components of the promotional process.  *See supra* pp. 12–13.  As Chief Donchez and the other members of the Final Interview Panel testified, Miller was stronger in other categories that they considered during the evaluation process, including that each Final Interview Panel member believed Miller's performance during the final interview itself was far superior to the performance of any of the other candidates.  After their evaluation of each candidate, the Final Interview Panel

unanimously ranked Miller as their first choice for the Major promotion. Thus, the summary judgment facts simply don't present an obvious or "'an overwhelming merit disparity'" between plaintiff Morgan and Miller's qualifications sufficient to create a triable issue of pretext. *Conroy*, 707 F.3d at 1172 (quoting *Santana*, 488 F.3d at 865); *see also MacKenzie*, 414 F.3d at 1277–78, *overruled on other grounds by Lincoln*, 900 F.3d at 1181 ("Unless the disparity in employees' qualifications are obvious, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." (citation and internal quotation marks omitted)). On these summary judgment facts, no reasonable jury could find or infer that defendant's promotion decision was pretext for sex or age discrimination.[11]

###### iii.   Subjective Criteria Used in Evaluating Candidates

*Third*, plaintiff Morgan argues that defendant's use of "subjective criteria" to evaluate the candidates during the 2020 Major promotional process is evidence of pretext. Doc. 36 at 22. Specifically, plaintiff Morgan cites Chief Donchez's testimony that he considers a candidate's "potential to move into the next rank" when making promotion decisions. Doc. 33-4 at 2 (Donchez Dep. 23:16–24:10).[12] She asserts that use of subjective criteria—like a candidate's

---

[11]   Plaintiff Morgan also cites summary judgment evidence showing that defendant had made certain changes to the promotional process in 2022, noting that candidates now receive more feedback than plaintiff Morgan received in her promotional processes. *See* Doc. 36 at 24–25. But she doesn't explain how a jury could find or infer a connection between defendant's changes to the promotional process and sex or age discrimination. To the contrary, the summary judgment facts show that defendant applied the same criteria in each promotional process to each candidate regardless of sex or age. Thus, any changes to the promotional process can't support a finding or inference of pretext. *See Majdalani v. Legacy Bank*, No. 06-1317-MLB, 2008 WL 11383350, at *15 (D. Kan. June 18, 2008) (holding that a policy change wasn't evidence of pretext because it "affected all non-officer employees" and "it was not aimed at plaintiff").

[12]   Plaintiff Morgan repeatedly asserts that Chief Donchez "heavily favored and weighed" or valued "potential" more than any other factor when evaluating candidates. *See, e.g.*, Doc. 36 at 4, 7, 8, 22. But, plaintiff Morgan cites no evidence to support this assertion. And, her contention finds no support in the summary judgment record. While Chief Donchez testified that he considered "potential" as one of many

potential—allowed bias to enter the promotional process, thus presenting a triable issue of pretext.

For support, plaintiff Morgan cites a Tenth Circuit case that noted: "'[D]iscrimination is more likely where subjective rather than objective criteria are used to reject a candidate's application.'"  *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 764 (10th Cir. 2017) (quoting *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1252 (10th Cir. 2002)) (holding defendant's evaluation of a candidate's "potential for success" and "leadership and communication skills" made it "evident that subjective considerations were used to reject his applications" and thus presented a genuine issue of pretext).  But, plaintiff Morgan ignores other Tenth Circuit precedent that nullifies her argument about the value of subjective criteria at the summary judgment stage:  "True, 'the existence of subjective criteria alone is not considered evidence of pretext,' but 'the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards.'"  *Id.* (quoting *Riggs*, 497 F.3d at 1120); *see also Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009) ("Although the presence of subjective decision-making can create a strong inference of discrimination, the use of subjective considerations by employers is not unlawful per se." (citation and internal quotation marks omitted)).

Also, our Circuit expressly has recognized that "there is certainly a level of subjectivity in *any* interview-based selection process," but that doesn't mean that employers "use[ ] their discretion as a means for unlawful discrimination."  *Turner*, 563 F.3d at 1145 (citation and internal quotation omitted) (alteration in original).  Thus, the Tenth Circuit "typically infer[s]

---

factors when evaluating candidates, he never testified—and no other summary judgment evidence supports the view—that he valued this one factor more than any other.

pretext . . . only when the criteria on which the employers ultimately rely are *entirely subjective* in nature." *Id.* (citation and internal quotation marks omitted).

Here, defendant's promotional process wasn't entirely subjective in nature. To the contrary, the summary judgment evidence shows that "potential" was one of many subjective and objective factors that Chief Donchez and other evaluators considered when ranking the candidates. In somewhat similar circumstances, our Circuit has held that a reasonable jury can't draw an inference of pretext based solely on an interview panel's use of subjective criteria. *See Sasser v. Salt Lake City Corp.*, 772 F. App'x 651, 670–71 (10th Cir. 2019) (finding no jury issue of pretext when "each panelist ranked candidates against benchmark criteria listed in the job description" because "[t]hough panelists weren't instructed to emphasize certain criteria, the process was still tethered to and limited by those criteria[,]" and thus, the "process . . . wasn't 'wholly subjective,' because panelists couldn't simply invent their own indicia of competence" (quoting *Garrett*, 305 F.3d at 1218)).

Also, plaintiff Morgan fails to identify any "'other circumstantial evidence'" supporting "'a stronger inference of discrimination in the context of subjective evaluation standards.'" *Sotunde*, 716 F. App'x at 764 (quoting *Riggs*, 497 F.3d at 1120). Thus, the court concludes, defendant's use of subjective criteria—alongside objective criteria—to evaluate the candidates in the 2020 Major promotional process doesn't present a triable issue of pretext for sex or age discrimination. *See Kear v. Kohl's Dep't Stores, Inc.*, No. 12-1235-JAR, 2015 WL 6473549, at *15 (D. Kan. Oct. 27, 2015) (holding that "the presence of partially subjective criteria used to make promotion decisions is insufficient standing alone to infer pretext").

### iv.    Deputy Chief Happer's Comment

*Fourth*, plaintiff Morgan asserts that Deputy Chief Happer's comment that, "we want somebody that's going to stay[,]" is evidence that defendant's decision to promote Miller over plaintiff Morgan was pretext for age discrimination. Doc. 33-6 at 21 (Morgan Dep. 148:6–149:4). Plaintiff Morgan testified that she thought Deputy Chief Happer's comment was based on her age and the possibility that she might leave the Police Department. *Id.* But, defendant argues, Deputy Chief Happer's comment doesn't refer to plaintiff Morgan or her age explicitly. And, defendant asserts, plaintiff Morgan's mere subjective belief that the comment was discriminatory based on her age doesn't suffice to establish a triable issue of pretext. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir. 2017) (explaining that the pretext analysis doesn't "look to the plaintiff's subjective evaluation of the situation" (citation and internal quotation marks omitted)).

Even if a jury could find or infer that Chief Happer's comment referred to age, defendant characterizes the comment as a "stray remark" that can't support a finding or inference of pretext. "The Tenth Circuit has established that a single age-related comment, even if made by a decisionmaker, may not be 'sufficient to infer discriminatory intent.'" *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1141 (10th Cir. 2000) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998)). And, while "[a]ge-related comments referring directly to the worker may support an inference of age discrimination[,]" "isolated [or] ambiguous comments are too abstract . . . to support a finding of age discrimination." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (citation and internal quotation marks omitted); *see id.* (holding that comments made by defendant's Chief Executive Officer and Personnel Director that defendant fired two women older than forty-years old because "the hospital 'need[s] some

new young blood' and that "'long-term employees have a diminishing return'" were "best characterized as stray remarks" and "insufficient to create a jury issue in an ADEA case"); *see also Kawahara v. Guar. Bank & Tr.*, 835 F. App'x 386, 390 (10th Cir. 2020) (finding that "incident where [supervisor] called [plaintiff] an 'old lady'" was "an isolated or ambiguous comment [that was] insufficient alone to support an inference of discrimination").

Here, Deputy Chief Happer's comment about wanting "someone that's going to stay" is an ambiguous remark. It's the only comment that plaintiff Morgan heard someone make— purportedly—about her age. Plaintiff Morgan testified that she responded to Deputy Chief Happer's comment by saying: "I never said I was going anywhere." Doc. 33-6 at 21 (Morgan Dep. 148:6–149:4). Also, she testified that she does not recall if Deputy Chief Happer responded to her comment. *Id.* And, she didn't raise any concerns about age or sex discrimination during her conversation with Deputy Chief Happer. *Id.* at 30 (Morgan Dep. 175:15–20). The summary judgment record contains no other information that would explain the context or meaning of the remark.[13] Thus, it is an ambiguous comment. And, consistent with the cited Tenth Circuit authority, this lone, ambiguous comment qualifies as a stray remark that doesn't present a triable issue whether defendant's reason for promoting Miller over plaintiff Morgan was pretext for age discrimination.

### v.    Plaintiff Morgan's Subjective Beliefs

*Fifth*, plaintiff Morgan contends that she has come forward with evidence of pretext because defendant preferred to promote younger and less qualified males over female candidates. Doc. 36 at 23. Also, as already discussed, plaintiff Morgan asserts she was the "top candidate

---

[13]    The court recognizes that Deputy Chief Happer denies that he made this comment. But, on summary judgment, the court must view the facts in the light favoring the non-moving party. *Scott*, 550 U.S. at 378–80. Here, that's plaintiff Morgan. So, the court accepts her testimony and rejects Deputy Chief Happer's testimony about the comment when deciding the summary judgment motion.

for promotion." *Id.* at 22. And, she contends that she was denied promotion despite feeling "confident about the interview process" and receiving "feedback" that was "always positive[.]" *Id.* But, the only evidence supporting plaintiff Morgan's assertions about defendant's hiring preferences and her superior qualifications for promotion are her own subjective beliefs. They can't support an inference of pretext. Instead, when "determining whether the proffered reason for a decision was pretextual," the court must "examine the facts as they appear *to the person making the decision*," and "do[es] not look to the plaintiff's subjective evaluation of the situation." *DePaula*, 859 F.3d at 971 (citation and internal quotation marks omitted).

Here, as already explained, the summary judgment record contains several examples where defendant promoted women officers older than 40 to higher ranks. *See supra* Part III.C.1.a.i.; *see also* Doc. 33-10 at 1 (Jenkins Decl. ¶ 7) (asserting that defendant promoted Keith Jenkins to Major in 2019, when he was 53 years old). Also, the summary judgment record shows that the Final Interview Panel unanimously ranked Miller as the first choice for promotion in the 2020 Major promotional process.[14] Doc. 33-2 at 3 (Donchez Decl. ¶ 22). And, the summary judgment facts establish that plaintiff Morgan finished fourth in the rankings, after each member of the Final Interview Panel considered various factors about the candidates' qualifications and ranked them based on those factors. *Id.* at 2 (Donchez Decl. ¶ 19); Doc. 33-7 at 2, 6 (Happer Decl. ¶ 14 & Attach. 3); Doc. 33-11 at 1, 3 (Wilburn Decl. ¶ 5 & Attach. 1); Doc.

---

[14]      Plaintiff Morgan also testified about her "perception" that Chief Donchez wanted to promote Miller to Major because Miller's father was a police chief, Miller spent a lot of time in the Chief's office, and the Chief was comfortable around Miller. Doc. 36-1 at 81–84 (Morgan 80:8–83:5). But, the only evidence supporting plaintiff Morgan's "perception" is her own testimony based on speculation. As already discussed, her subjective beliefs about defendant's reasons for promoting Miller can't present a triable question of pretext. Also, she can't establish pretext with her own speculation. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").

33-12 at 1, 3 (Blevins Decl. ¶ 5 & Attach. 1).  Plaintiff's subjective beliefs about defendant's

promotional processes, generally, or the 2020 Major promotional process, specifically, don't

present a triable issue whether defendant's stated reason for promoting Miller to Major is pretext

for sex or age discrimination.[15]

### vi.   Miller's Age Compared to Plaintiff Morgan

*Sixth*, plaintiff Morgan argues that defendant's decision to promote Miller, who is

"substantially younger" than plaintiff Morgan, is evidence of pretext for age discrimination.

Doc. 36 at 23.  But, this fact, alone, can't establish pretext.  *See Leyba v. Herman*, 3 F. App'x

669, 670–71 (10th Cir. 2001) (affirming summary judgment against age discrimination claim

based on "denial of a promotion to a supervisory position in favor of another, younger candidate"

because plaintiff "had presented no admissible evidence demonstrating that [defendant's] reasons

for hiring the successful candidate were a pretext for age discrimination"); *see also Housley v.*

*Boeing Co.*, 177 F. Supp. 2d 1209, 1216–17 (D. Kan. 2001) (granting summary judgment against

sex and age discrimination claim because plaintiff failed to come forward with evidence that

defendant's promotion of a younger, male applicant was pretext for sex or age discrimination).

Also, the summary judgment record includes examples where defendant promoted officers who

were in the protected age category and who were older than other candidates who applied for the

position.  *See* Doc. 33-1 at 2 (Sanders Decl. ¶ 13) (testifying that Cindy Henson was 47 years old

---

[15]      Plaintiff's Opposition also asserts in its pretext argument that an "'employer's failure to give
more than sham or *pro forma* consideration to a candidate [or] his or her qualifications, coupled with
other circumstantial evidence of discriminatory intent, can demonstrate pretext.'"  Doc. 36 at 23 (quoting
*Danville*, 292 F.3d at 1251).  Plaintiff has the legal principle right, but her problem is a factual one.
Nothing in this case's summary judgment record supports a finding or inference that plaintiff Morgan
received sham or *pro forma* consideration for the 2020 Major promotion.  To the contrary, the summary
judgment facts establish that she participated in each component of that promotional processes—just like
all other candidates.  And, the Final Interview Panel members evaluated her performance, along with the
other five candidates, using the same criteria and ranking her fourth among the six candidates.

when defendant promoted her to Major in 2016); *see also* Doc. 33-10 at 1 (Jenkins Decl. ¶ 7) (asserting that defendant promoted Keith Jenkins to Major in 2019, when he was 53 years old); Doc. 33-2 at 3 (Donchez Decl. ¶¶ 24, 28–31) (testifying that defendant promoted plaintiff Morgan to Major over Captain Fitzgerald[16]).  Thus, the mere fact that defendant promoted a younger candidate to Major over plaintiff Morgan can't create a genuine issue of pretext.

### vii.    Conclusion

In sum, the court finds plaintiff Morgan's pretext arguments present no genuine issue for trial about the issue whether defendant's decision to promote Miller to Captain over plaintiff Morgan was discriminatory based on her sex or age.  "To survive summary judgment, [plaintiff Morgan] need not raise a genuine issue as to pretext with any individual piece of evidence." *Bittel v. Pfizer, Inc.*, 307 F. App'x 132, 142 (10th Cir. 2009).  Instead, summary judgment is precluded "if all of [her] evidence, taken together, creates a genuine issue as to pretext."  *Id.* (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004)).  Although plaintiff Morgan has shown that defendant relied on some subjective criteria (and also objective criteria) when ranking candidates and she has come forward with evidence of one ambiguous and stray remark, these summary judgment facts don't present a triable issue whether defendant's proffered reason for promoting Miller over plaintiff Morgan—*i.e.*, because Miller performed substantially better in the 2020 Major promotional process than the other candidates—was pretext for sex or age discrimination.  *See id.* (affirming summary judgment against age discrimination claim where plaintiff presented some evidence "probative of pretext" including policy ambiguities and plaintiff's supervisor misleading him on several occasions but none of it

---

[16]      Fitzgerald is three years younger than plaintiff Morgan.  *Compare* Doc. 33-1 at 2 (Sanders Decl. ¶ 9) (asserting that Fitzgerald was born in 1966), *with id.* at 1 (Sanders Decl. ¶ 5) (asserting that plaintiff Morgan was born in 1963).

"exculpate[d]" plaintiff's policy violations that led to his termination and concluding, on those summary judgment facts, "a rational factfinder could come to only one conclusion regarding [plaintiff's] termination:  he was terminated because of this spate of policy violations, not his age"); *see also Annett*, 371 F.3d at 1241 (affirming summary judgment against retaliation claim and holding that, despite summary judgment evidence that included close temporal proximity of adverse action and protective activity and comments made by search committee members about plaintiff's loyalty and her lawsuit, "when viewed in light of the evidence as a whole" such evidence couldn't support a reasonable inference of pretext).  Thus, the court grants summary judgment against plaintiff Morgan's failure to promote claim based on defendant's decision to promote Miller to Major in 2020.

### b.   Defendant's Decision to Place Plaintiff Morgan and Captain Fitzgerald in Acting Major Positions

Defendant next argues that it deserves summary judgment against plaintiff Morgan's sex and age discrimination claim based on defendant's decision to place plaintiff Morgan and Captain Fitzgerald in Acting Major Promotions while it decided which candidate to promote to Major.  Defendant asserts that plaintiff Morgan's claim fails the first step in the *McDonnell Douglas* analysis because she can't prove a prima facie case of discrimination.  And, even if plaintiff Morgan could come forward with evidence supporting a prima facie case of discrimination, defendant asserts that the summary judgment record presents no genuine issue of pretext.

### i.   Prima Facie Case

As already explained, a prima face case of Title VII and ADEA discrimination in a failure to promote case requires a plaintiff to come forward with a triable issue whether "(1) she was a member of a protected class; (2) she applied for and was qualified for the position; (3)

despite being qualified she was rejected; and (4) after she was rejected, the position was filled by someone outside the protected class." *MacKenzie*, 414 F.3d at 1277–78 (ADEA claim); *Jones*, 349 F.3d at 1266 (Title VII claim). Defendant asserts that plaintiff Morgan can't sustain the fourth element because defendant never rejected her for the 2021 Major promotion and defendant never filled the 2021 Major promotion with someone outside the protected class. To the contrary, the summary judgment facts establish that defendant eventually promoted plaintiff Morgan to Major after she and Fitzgerald served as Acting Majors for three-month trial periods. Doc. 33-2 at 3 (Donchez Decl. ¶¶ 28–31).

Plaintiff Morgan never responds to defendant's prima facie argument. Confusingly, plaintiffs' Opposition asserts that defendant raises "[n]o contention" that plaintiffs "fail to satisfy the requirements for meeting a prima facie case for their claims of discrimination." Doc. 36 at 20. And so, plaintiffs argue, the only issue for summary judgment is whether they have come forward with a triable issue of pretext. *Id.* Conclusory certitude is no substitute for the elements of a prima facie case. The court holds that plaintiff Morgan tacitly has conceded her failure to promote claim based on defendant's decision to place her in the Acting Major position because she has failed to come forward with a triable issue on the fourth element of a prima facie case.[17]

---

[17]     Each of plaintiffs' asserted legal claims "aris[e] from the denial of promotional opportunities[.]" Doc. 29 at 11–12 (Pretrial Order ¶ 4.a.). The Pretrial Order doesn't assert a discrimination claim simply based on defendant's decision to use the Acting Major trial period before promoting plaintiff Morgan to Major. Nor could plaintiff Morgan tenably assert such a claim. To assert a Title VII and ADEA claim based on discriminatory treatment, a plaintiff must show "1) she is a member of the class protected by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998). Here, plaintiff Morgan can't sustain the second element—*i.e.*, that she suffered an adverse action.

Defendant's decision to use the trial period as an evaluative tool isn't an adverse action that could support a Title VII or ADEA discrimination claim because it's not an adversely significant change in her employment status. *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (explaining that for "discrimination claims, [a]n adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

### ii.    Pretext

But, even if plaintiff Morgan could establish a prima facie case, her claim still would not survive summary judgment under the second and third elements of the *McDonnell Douglas* test. At the second step, defendant has come forward with a legitimate and non-discriminatory reason for placing plaintiff Morgan and Fitzgerald in the Acting Major positions before deciding which candidate to promote to Major.  As Chief Donchez testified, he decided to give two candidates from the 2020 Major promotional process an opportunity to serve as an Acting Major for three months to determine their readiness for promotion because there wasn't a "clear-cut" second place finisher in the Final Interview Panel rankings.  Doc. 33-4 at 10–11 (Donchez Dep. 70:3–20, 71:23–73:7); *see also supra* p. 11–12 (calculating the averaged rankings from the Final Interview Panel and finding that Livengood and Fitzgerald tied for second (both with an averaged rank of 3.0), and plaintiff Morgan finished fourth (with an averaged rank of 4.0)).

Chief Donchez selected Captain Mark Fitzgerald (who tied for second in the averaged rankings) and plaintiff Morgan (who finished fourth in the averaged rankings) to serve three months in the Acting Major position.  Doc. 33-4 at 10–11 (Donchez Dep. 71:23–73:7).  He didn't place the other second-place finisher—Captain Kyle Livengood (a man who is younger than plaintiff Morgan)—in an Acting Major position because he didn't meet the more stringent education requirements that defendant was implementing on January 1, 2021.  *Id.* at 10 (Donchez Dep. 71:23–72:15).  After the Acting Major periods ended, defendant decided that plaintiff Morgan was the better candidate for promotion.  *Id.* at 13 (Donchez Dep. 81:15–83:24); Doc. 33-17 (Donchez May 11, 2021 Meeting Notes).  And so, defendant promoted plaintiff Morgan to the

---

decision causing a significant change in benefits" (citation and internal quotation marks omitted)).  *Cf. Vargas v. Johnson*, No. 14-00444 WJ/WPL, 2015 WL 13667419, at *10 (D.N.M. Oct. 14, 2015) (holding plaintiff's "prima facie case fails on the second requirement" because "his non-selection for temporary positions is not an adverse action").

rank of Major on May 16, 2021.  Doc. 33-2 at 3 (Donchez Decl. ¶ 31).  Defendant has satisfied

its burden to come forward with a legitimate, non-discriminatory reason for its decision to use

the Acting Major placements before promoting plaintiff Morgan—the fourth place finisher in the

2020 Major promotional process—to Major.

At the third step of the *McDonnell Douglas* test, the only pretext evidence that plaintiff

cites is the fact that defendant never has placed candidates for promotion in acting positions

before promoting one of the candidates to the position.  Doc. 36 at 24.  On this summary

judgment record, that's true.  *See* Doc. 33-4 at 10 (Donchez Dep. 70:3–20) (testifying that the

Acting Major appointment was a "shift from prior practice in connection with the promotion

process"); *see also* Doc. 36-9 at 2–3 (Morgan Decl. ¶ 4) (testifying that Chief Donchez's use of a

"trial period" by placing candidates into Acting Major positions to decide who to promote to an

open position was something defendant had not done previously).  But, merely because

defendant used a new process that it hadn't used before doesn't present a triable issue of pretext

based on sex or age.  *See, e.g.*, *Vigil v. City of Albuquerque*, 210 F. App'x 758, 766 (10th Cir.

2006) (affirming summary judgment against Title VII claims and holding that evidence of

employer changing the interview process it had used one year earlier didn't establish pretext but

instead showed that defendant "offer[ed] a fair and level playing field to the candidates" by

"providing the same questions to all the candidates," and "it was reasonable" to ask the

candidates different questions than it had the year before "because the qualifications for" the

position had changed).

Indeed, plaintiff fails to come forward with any evidence supporting a finding or

inference that the decision to use this methodology was based on sex or age discrimination.  As

just discussed, defendant used the process to place a man and a woman—who are both in their

50s—in the Acting Major positions and it excluded the other second place finisher (a younger

man) from the process.  It did so because the Final Interview Rankings produced no "clear-cut"

second place finisher—a fact that the summary judgment record established as undisputed.  And

tellingly, at the end of the process, defendant decided plaintiff Morgan (the fourth place finisher

in the Final Interview Panel rankings) was the better qualified candidate, and it promoted her to

the Major position.  None of these facts can sustain a finding or inference of pretext for sex or

age discrimination.  Thus, the court grants summary judgment against plaintiff Morgan's sex and

age discrimination claims based on defendant's decision to place her and Fitzgerald in Acting

Major positions before promoting plaintiff Morgan to Major.

### 2.  Retaliation Claims

*Next*, the court addresses plaintiff Morgan's retaliation claims.  Plaintiff Morgan asserts

that defendant's use of the Acting Major position before deciding to promote her to Major was

retaliation for complaining about discrimination.

Like plaintiff Morgan's discrimination claims, the *McDonnell Douglas* burden-shifting

framework applies to plaintiff's Title VII retaliation claims.[18]  *Davis v. Unified Sch. Dist. 500*,

750 F.3d 1168, 1170 (10th Cir. 2014).  Where no direct evidence of retaliation exists, plaintiff

first must establish a prima facie case of retaliation by showing that:  "(1) [s]he engaged in

protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal

connection between [her] protected activity and the adverse employment action."  *Id.*  The

Supreme Court has "clarified the causation standard for Title VII retaliation claims, explaining:

'[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her

---

[18]      According to the Pretrial Order, plaintiff Morgan asserts her retaliation claim under Title VII
only.  Doc. 29 at 11 (Pretrial Order ¶ 4.a.iii.).

protected activity was a but-for cause of the alleged adverse action by the employer.'"  *Id.*
(quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

Next, if plaintiff meets her prima facie burden, the burden shifts to defendant to articulate
a legitimate, non-retaliatory reason for the adverse employment action.  *See Crowe v. ADT Sec.
Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011); *see also Mann v. XPO Logistics Freight, Inc.*,
819 F. App'x 585, 594 (10th Cir. 2020).  And, last, where defendant satisfies this burden, the
burden shifts back to plaintiff to show that defendant's proffered reasons for its actions are
pretextual.  *Crowe*, 649 F.3d at 1195.

Plaintiff Morgan's retaliation claims here fail for several reasons.  The court already has
identified most of them.

*First*, plaintiff Morgan can't establish a prima facie case of retaliation because the
summary judgment record presents no triable issue whether she sustained an adverse
employment action.  "For retaliation claims, 'a plaintiff must show that a reasonable employee
would have found the challenged action materially adverse, which in this context means it well
might have dissuaded a reasonable worker from making or supporting a charge of
discrimination.'"  *Hiatt*, 858 F.3d at 1316 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53, 68 (2006)).  A temporary promotion to the Acting Major position can't qualify as
an adverse action capable of supporting a retaliation claim because it's not something that would
dissuade a reasonable person from complaining about discrimination.  *See Harrison v. U.S.
Postal Serv.*, 450 F. App'x 38, 41 (2d Cir. 2011) ("A reasonable person would not find that being
given a discretionary and favorable assignment, even if for a short period of time, was materially
adverse."); *see also Atkins v. Boeing Co.*, No. 91-1404-MLB, 1993 WL 186170, at *7 (D. Kan.
May 5, 1993) (holding that plaintiff's temporary promotion followed by his return to his

previous position "cannot be considered an adverse action" and plaintiff "therefore cannot satisfy one of the essential requirements of his retaliation claim"). No reasonable jury could find that a temporary promotion to a position plaintiff Morgan aspired to hold on a full-time basis could dissuade a reasonable worker from making or supporting a charge of discrimination. *Hiatt*, 858 F.3d at 1316. Thus, plaintiff Morgan's prima facie case fails under the second prima facie requirement.

*Second*, the summary judgment facts don't present a jury question whether a causal connection exists between plaintiff Morgan's protected activity and the alleged adverse action. Thus, she can't satisfy the third element of a prima facie case. It's undisputed that Chief Donchez made the decision to place plaintiff Morgan and other candidates into Acting Major positions before plaintiff Morgan complained to him about discrimination. Doc. 33-2 at 3 (Donchez Decl. ¶ 24). He told plaintiff Morgan about his temporary promotion decision during their August 6, 2020 meeting. Doc. 33-13 at 3 (Morgan August 6, 2020 Meeting Notes). And, it wasn't until that meeting that plaintiff Morgan first complained about discrimination. *Id.* at 2–3. Thus, the summary judgment record can't support a reasonable finding or inference of a causal connection between plaintiff Morgan's complaints about discrimination and defendant's decision to place candidates in the Acting Major positions before deciding which candidate to promote to Major. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1220 (10th Cir. 2013) (holding that plaintiff's retaliation claim faced a "timing problem" and failed "to establish any adverse action related to her HR complaint" because defendant made the employment decision before plaintiff lodged her HR complaint, and as a consequence, affirming summary judgment against plaintiff's retaliation claim).

*Third*, even if plaintiff Morgan could establish a prima facie case of retaliation, she hasn't come forward with any evidence of pretext.  As discussed, her only evidence of pretext is testimony that defendant never had placed promotion candidates into temporary acting positions before selecting one of them for the permanent promotion.  Doc. 36 at 30.  But, plaintiff Morgan has adduced no submissible evidence supporting a finding or inference that the decision to place candidates in temporary acting positions was based on sex or age discrimination.  Also, she hasn't come forward with any evidence from which a reasonable jury could find or infer that defendant's decision was based on plaintiff Morgan's complaints about discrimination.  Instead, the summary judgment facts establish that defendant made this decision because the Final Interview Rankings produced no "clear-cut" second place finisher.  It placed plaintiff Morgan (the fourth place finisher in the Final Interview Panel rankings) and Fitzgerald (who tied for second in the Final Interview Panel rankings) in the Acting Major positions.  And, once the Acting Major periods ended, defendant decided to promote plaintiff Morgan to the Major position.  No reasonable jury could find or infer from these summary judgment facts that defendant's stated reason for using the temporary Acting Major periods was pretext for retaliation.

For all these reasons, plaintiff Morgan's retaliation claims fail as a matter of law.  Thus, the court grants summary judgment against her retaliation claims.

### D.  Plaintiff Otero's Discrimination and Retaliation Claims

The court now turns to plaintiff Otero's Title VII and ADEA discrimination and retaliation claims.

### 1. Discrimination Claims

As already outlined, Title VII prohibits employers from discriminating against employees based on sex. 42 U.S.C. § 2000e-2(a)(1). It also prohibits discrimination based on an "individual's race . . . or national origin[.]" *Id.* The same *McDonnell Douglas* burden-shifting framework that governs plaintiff Morgan's Title VII sex discrimination claims applies to plaintiff Otero's Title VII sex, race, and national origin discrimination claims. *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019); *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165–66 (10th Cir. 2007). It also applies to her ADEA claim. *Garrett*, 305 F.3d at 1216.

Plaintiff Otero's sex, age, race, and national origin discrimination claims rely on (1) defendant's decision to promote Keith Hruska to Captain in July 2020, and (2) defendant's decision to promote Richard Breshears to Captain in November 2020. The court addresses each of these claims, separately, below.

### a. Defendant's Promotion of Keith Hruska to Captain

Defendant doesn't challenge the first step in the *McDonnell Douglas* analysis, *i.e.*, the prima facie case of discrimination. Thus, the court assumes that plaintiff Otero has shouldered her burden at this stage, and the court moves to the second stage of the analysis. It requires the court to decide whether defendant has come forward with a legitimate, non-discriminatory reason for its decision to promote Hruska to Captain. Defendant asserts that it promoted Hruska because he was the top-rated candidate by the Final Interview Panel after the 2020 Captain promotional process completed. Doc. 33 at 61. This is a legitimate and nondiscriminatory reason for the promotion decision. So it suffices for the second step of the *McDonnell Douglas* test.

This moves the analysis to the third stage.  At summary judgment, it asks whether the summary judgment facts present a jury issue whether defendant's stated reason for promoting Hruska is pretext.  Plaintiff Otero asserts several arguments, contending that the summary judgment facts support a finding or inference of sex, age, race, and national origin discrimination.  The court discusses her arguments, below.

### i.    Alleged Bias Against Women

*First*, to support her sex discrimination claims, plaintiff Otero relies on testimony by Deputy Chief Wilburn about the challenges that women police officers face.  Doc. 36 at 25.  For the same reasons already discussed with plaintiff Morgan's claims, this evidence can't support a reasonable finding or inference that defendant has a bias against promoting women, generally, or that defendant had a bias against promoting a woman for the Captain promotion in 2020.  To the contrary, the summary judgment record contains several examples of defendant promoting women to higher ranking positions.  *See supra* pp. 46–47 (concluding that plaintiff Morgan's evidence about alleged bias against women failed to show pretext).  Plaintiff Otero's unsupported allegations of bias against women don't permit an issue of pretext.

### ii.    Plaintiff Otero's Qualifications

*Second*, to support each of her discrimination claims, plaintiff Otero asserts that defendant's promotion of Hruska was discriminatory because she was better qualified than Hruska, but yet, defendant chose to promote a younger, white man instead of her.  Doc. 36 at 26.  The summary judgment record simply doesn't support plaintiff Otero's assertion that she was better qualified.  As already discussed, a plaintiff who alleges that "an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief . . . must come forward with facts showing an

overwhelming disparity in qualifications." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citation and internal quotation marks omitted).  Here, the summary judgment facts don't show an "overwhelming disparity" between plaintiff Otero and Hruska's qualifications for the promotion.

Both plaintiff Otero and Hruska began working for defendant's Police Department in 2001.  Doc. 29 at 3 (Pretrial Order ¶ 2.a.5.); Doc. 33-1 at 2 (Sanders Decl. ¶ 15).  Defendant promoted plaintiff Otero to Sergeant in 2012.  Doc. 29 at 3 (Pretrial Order ¶ 2.a.7.).  And, it promoted Hruska to Sergeant in 2017.  Doc. 33-1 at 2 (Sanders Decl. ¶ 15).  When they both applied for the 2020 Captain promotion, plaintiff Otero had worked in five units in the Department, Doc. 33-19 at 1–2 (Otero Resume), while Hruska had worked in six units, Doc. 33-2 at 4, 52 (Donchez Decl. ¶ 40 & Attach. 14).

During the 2020 promotional process, plaintiff Otero received a second place ranking from the Captains' roundtable while Hruska received a fourth place ranking.  Doc. 33-22 at 3 (Rankings Spreadsheet).  But, those Captains' rankings were advisory in nature and did not receive specific weight in the promotional process.  Doc. 33-2 at 4 (Donchez Decl. ¶ 42).  Later in the process, the candidates for promotion participated in a role play and interview with the 2020 Captains' Final Interview Panel.  *Id.* (Donchez Decl. ¶ 43).  After the role play scenarios, all eight members of the Final Interview Panel rated Hruska as "highly effective" in all four categories—for a total of 32 "highly effective" ratings.  Doc. 33-2 at 4, 67 (Donchez Decl. ¶ 46 & Attach. 19).  By comparison, plaintiff Otero received just five "highly effective" ratings, 26 "moderately effective" ratings, and one "improvement needed" rating.  Doc. 33-23 at 4 (Otero Promotional Process Summary).

The Final Interview Panel also conducted traditional interviews with each candidate. Doc. 33-2 at 4 (Donchez Decl. ¶ 48). After the interviews, each member of the Final Interview Panel individually evaluated the candidates' performance in the role play scenario and interview and separately ranked the candidates for promotion. Doc. 33-4 at 14–15 (Donchez Dep. 92:12–93:1). The Final Interview Panel members gave then-Sergeant Hruska five first-place rankings, two third-place rankings, and one fourth-place ranking. Doc. 33-22 at 1; Doc. 33-9 at 2–3 (Houston Decl. ¶ 11 & Attach. 1). And, they gave plaintiff Otero one second-place ranking, one third-place ranking, and the other six panel members ranked her either fourth or fifth. *Id.* On average, the Final Interview Panel ranked Hruska first and Otero fifth. *Id.* And, based on those rankings, defendant decided to promote Hruska—the top finisher in the Final Interview Panel rankings—to the Captain promotion. Doc. 33-4 at 5 (Donchez Dep. 42:17–19).

No reasonable jury could find or infer from these facts that an "overwhelming disparity" exists between plaintiff Otero and Hruska's qualifications. Both had worked for the Department for the same amount of time. Although plaintiff Otero had served five more years in the rank of Sergeant than Hruska, he had worked in more units than she had. And, years of rank in the Sergeant position wasn't the only factor that the evaluators considered when deciding who to promote. As discussed, the evaluators considered several factors, including the candidates' performance in the promotional process.[19] *See supra* pp. 27–29. And, the undisputed summary judgment facts show that Hruska received better evaluations from the Final Interview Panel both in his performance in the role play and in his final ranking after the interviews. Based on

---

[19] Plaintiff also argues that her application for the 2020 Captain promotion was her fourth attempt at promotion while it was only Hruska's first attempt. But, none of the evaluators considered the number of times that an applicant had applied for promotion when evaluating the candidates. And, plaintiff doesn't explain why a failure to consider the number of times a candidate had applied for promotion is discrimination based on any protected category.

Hrsuka's first-place ranking from the Final Interview Panel, defendant decided to promote him to Captain.

As our Circuit has instructed, the court's role here "'is to prevent intentional discriminatory hiring practices, not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.'" *Riggs*, 497 F.3d at 1119 (quoting *Young*, 468 F.3d at 1250). The court can't second guess or question defendant's decision here when both candidates had the minimum qualifications necessary for the promotion. The summary judgment facts don't present a genuine issue whether an "overwhelming disparity" exists between Hruska and plaintiff Otero's qualifications. On these summary judgment facts, no reasonable jury could find or infer that defendant's promotion decision was pretext based on the candidates' qualifications for the position.

### iii.    Subjective Criteria

*Third*, to support each of her discrimination claims, plaintiff Otero asserts that defendant's use of subjective criteria in the promotional process presents a triable issue of pretext. The court rejects this argument for the same reasons already discussed in its analysis of plaintiff Morgan's claims. *See supra* pp. 51–53. As stated, our Circuit has recognized that "the presence of subjective decision-making can create a strong inference of discrimination," but, by itself, "the use of subjective considerations by employers is not unlawful per se." *Turner*, 563 F.3d at 1145 (citation and internal quotation marks omitted); *see also Kear*, 2015 WL 6473549, at *15 (holding that "the presence of partially subjective criteria used to make promotion decisions is insufficient standing alone to infer pretext"). Instead, the Tenth Circuit "typically infer[s] pretext . . . only when the criteria on which the employers ultimately rely are *entirely subjective* in nature." *Turner*, 563 F.3d at 1145 (citation and internal quotation marks omitted).

71

Here, the summary judgment record shows that the 2020 Captain promotional process wasn't entirely subjective in nature. Instead, the undisputed facts establish that Chief Donchez and the other evaluators considered both subjective and objective factors when evaluating and ranking each candidate. *See supra* pp. 27–29. Also, plaintiff Otero identifies no "'other circumstantial evidence'" supporting "'a stronger inference of discrimination in the context of subjective evaluation standards.'" *Sotunde*, 716 F. App'x at 764 (quoting *Riggs*, 497 F.3d at 1120). Thus, plaintiff Otero shows no genuine issue of pretext based on defendant's use of some subjective criteria to evaluate the candidates for promotion.[20]

### iv.    Comments about Plaintiff Otero's Accent

*Fourth*, plaintiff Otero asserts that comments about her accent are evidence of pretext for race and national origin discrimination. It's undisputed that plaintiff Otero's native language is Spanish, and she speaks English with an accent. Doc. 33-5 at 11 (Happer Dep. 61:25–62:12). Plaintiff Otero argues that her accent "has been used as a barrier to equal treatment." Doc. 36 at 28. But, the summary judgment facts can't support her assertion.

Instead, Chief Donchez testified that defendant values plaintiff Otero's bilingual skills, paying her an annual financial bonus based on her ability to serve as a translator. Doc. 33-2 at 4 (Donchez Decl. ¶ 36). And, although several witnesses testified that plaintiff Otero's accent was discussed within the Police Department, none of the witnesses testified that the comments manifested hostility toward plaintiff's race or national origin. *See* Doc. 36-1 at 238 (Morgan Dep. 237:5–11) (testifying that plaintiff Morgan had heard comments that plaintiff Otero was

---

[20]    Plaintiff Otero also asserts that Chief Donchez "has made constant, irregular changes to the promotional process for Major and Captain." Doc. 36 at 26 (emphasis omitted). But she cites no evidence to support her assertion, and the record doesn't reveal any evidence supporting it either. As noted above, defendant has made some changes in the promotional process, but plaintiffs haven't explained how those changes are discriminatory.

"hard to understand"); Doc. 36-3 at 49 (Wilburn Dep. 48:13–25) (testifying that Deputy Chief Wilburn had heard others in the Police Department, including supervisors, discussing plaintiff's accent); Doc. 36-8 at 72–73 (Happer Dep. 71:10–72:4) (testifying that Deputy Chief Happer has told plaintiff Otero that "sometimes when she is nervous or speaking quickly her accent comes in and it makes it difficult to understand"); Doc. 36-6 at 49–50 (Miller Dep. 48:18–49:2) (testifying that "over the years" he has heard "a handful of people" discuss plaintiff Otero's accent "especially when she gets nervous or if she gets irritated" because then "it's a little bit hard to understand").

Our court has addressed similar theories. Those discussions recognize that such comments "implicate national origin, but [that] do not indicate discrimination animus" can't support a Title VII claim. *Shahmaleki v. Kan. State Univ.*, No. 15-7766-JAR, 2016 WL 3522040, at *5 (D. Kan. June 28, 2016); *see also Stephens v. City of Topeka, Kan.*, 33 F. Supp. 2d 947, 963 (D. Kan. 1999) ("Isolated comments about accent or national origin do not suffice to impose liability. They do not show discriminatory motivation. At best they constitute stray remarks."); *MohanKumar v. Kan. State Univ.*, 60 F. Supp. 2d 1153, 1160–61 (D. Kan. 1999) (holding that comments that "referred to plaintiff's national origin on several occasions" over a period of years did "not reasonably suggest hostility or ill will towards plaintiff because of her Indian origin"). Here, no reasonable jury could find the testimony about discussions referring to plaintiff's accent manifest a discriminatory animus, so the testimony can't support a pretext finding. And—excluding Chief Happer's testimony—the rest of the testimony never identifies who discussed plaintiff Otero's accent and never connects those discussions to any of plaintiff Otero's promotional processes or the decision maker in those processes.[21] Thus, that testimony

---

[21]     Plaintiff Otero suggests that Chief Donchez referred to plaintiff's accent as a reason not to promote her. Doc. 36 at 28. This argument misrepresents the summary judgment record. Chief Donchez

can't support an inference of pretext in the promotional process. *See Juarez-Galvan v. United Parcel Serv., Inc.*, 572 F. App'x 619, 621 (10th Cir. 2014) (holding that "all of the acts identified by [plaintiff] as relating to his accent and origin were undertaken by actors not connected in any way to the [employment] decision").

Also, the summary judgment record shows that none of the evaluators in the 2020 Captain promotional process discussed plaintiff's Otero's accent during that process.  None of the participants in the Captains' roundtable discussion discussed plaintiff Otero's accent.  Doc. 33-21 at 1 (Miller Decl. ¶ 3).  And, each member of the Final Interview Panel testified that they did not discuss plaintiff Otero's accent.  Doc. 33-2 at 5 (Donchez Decl. ¶ 51); Doc. 33-7 at 3 (Happer Decl. ¶ 24); Doc. 33-11 at 2 (Wilburn Decl. ¶ 12); Doc. 33-12 at 2 (Blevins Decl. ¶ 14); Doc. 33-21 at 2 (Miller Decl. ¶ 9); Doc. 33-10 at 2 (Jenkins Decl. ¶ 12); Doc. 33-9 at 2 (Houston Decl. ¶ 13).  Plaintiff Otero marshalled no contrary evidence.

Likewise, plaintiff Otero has failed her burden to identify evidence that amounts to more than an isolated stray remark.  Plaintiff Otero asserts that the summary judgment facts show that one of the Final Interview Panel members—Deputy Chief Happer—discriminated against her based on her race and national origin because he noted in his promotional process feedback that she is difficult to understand.  Doc. 33-7 at 3 (Happer Decl. ¶ 25); Doc. 33-21 at 2 (Miller Decl. ¶ 10).  Deputy Chief Happer testified that his comment referred to his belief that when plaintiff Otero gets nervous or starts speaking fast, her accent is more pronounced and it becomes more difficult for him to understand her.  Doc. 33-5 at 11 (Happer Dep. 61:15–24).  Defendant

---

noted—after plaintiff Otero's interview—that she "[n]eeds more articulation."  Doc. 36-4 at 47 (Donchez Dep. 46:2–9).  He explained that his comment meant that plaintiff Otero "needed to be a little bit deeper in some of her explanations."  *Id.*  Thus, he testified that his comment referred to the substance of her answers to the interview questions.  Nothing in the record permits a finding or inference that Chief Donchez's comment about "articulation" was a comment about plaintiff Otero's accent.

responds to plaintiff Otero's contentions about this comment, asserting that Deputy Chief Happer's comment was nothing more than a stray remark made by just one of the eight members of the Final Interview Panel. And, as defendant correctly asserts, if one removes Deputy Chief Happer's rankings from the averaged Final Interview Panel rankings, Hruska still finishes first in the rankings and Otero finishes fifth based on the rankings of the other seven Panel members. Doc. 33-22 at 1; Doc. 33-9 at 2–3 (Houston Decl. ¶ 11 & Attach. 1).

On similar facts, other courts have concluded that such a remark made by one individual—like the one comment here made by one person among the eight-person Final Interview Panel—doesn't suffice to support a triable claim of intentional discrimination. *See Lochard v. Provena St. Joseph Med. Ctr.*, 367 F. Supp. 2d 1214, 1220–21, 1224 (N.D. Ill. 2005) (holding that interviewer's notes that plaintiff had a "heavy accent" and was "very hard to understand" was "an isolated stray comment or remark" that did not "as a matter of law, establish pretext" because plaintiff had no evidence "to provide the requisite nexus between [the] written statement noting [plaintiff's] heavy accent and [defendant's] decision not to hire him" and "without more" the comment did "not give rise to an inference of race discrimination or establish pretext" sufficient to preclude summary judgment against Title VII claim); *see also Thuc Tran v. Sonic Indus. Servs., Inc.*, 767 F. Supp. 2d 1217, 1229 (W.D. Okla. 2011) (holding that supervisor's comment that plaintiff was "hard to understand" was an "isolated incident[ ], which even when viewed in a light most favorable to [p]laintiff, [was] not sufficient to evidence [the supervisor's] alleged bias or that [d]efendant's proffered reasons for terminating [p]laintiff were pretextual[,]" and thus, granting summary judgment against plaintiff's Title VII claims). Following the persuasive guidance of those opinions, the court concludes here that Chief Deputy Happer's comment doesn't establish a triable issue of pretext.

### v. Plaintiff Otero's Allegations about Diversity Efforts

*Fifth*, plaintiff Otero makes unsupported allegations that Chief Donchez doesn't support a "diverse command staff." Doc. 36 at 24. But, Chief Donchez testified factually about defendant's efforts to diversify its Police Department among the officer ranks. Doc. 36-4 at 27–30 (Donchez Dep. 26:24–29:15). Also, he testified that defendant selects the best candidates for a position, considering "[c]ompetency" as the "upmost importance[,]" and without considering a candidate's protected status. *Id.* at 27 (Donchez Dep. 26:11–23). Plaintiff Otero asserts that Chief Donchez's testimony about his hiring practices somehow shows discrimination. No reasonable factfinder could agree with her when all the evidence is just the opposite. Chief Donchez testified that defendant selects the most qualified candidates and doesn't impermissibly consider a candidate's protected status in the hiring process. Defendant's efforts to promote diversity among its officer ranks isn't evidence of pretext.

Also, plaintiff Otero asserts that Captain Tisinger has complained to her about race discrimination within defendant's Police Department. Doc. 36 at 29. But, this factual assertion appears nowhere in plaintiffs' Statements of Fact. Thus, plaintiff Otero hasn't complied with our court's local rules for governing summary judgment motions. *See* D. Kan. Rule 56.1(b)(1) (requiring that a "memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists" and "[e]ach fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed"). Also, as defendant argues, the evidence is hearsay. To support the evidence, plaintiff Otero relies on her own testimony about conversations she had with Captain Tisinger. Doc. 36-2 at 75–79 (Otero Dep. 74:7–78:13).

Thus, the statements are ones that "the declarant [has] not [made] while testifying" and plaintiff "offers [them] in evidence to prove the truth of the matter asserted[.]"  Fed. R. Evid. 801(c) (defining hearsay); *see also* Fed. R. Evid. 802 (providing that "[h]earsay is not admissible unless" otherwise permitted by federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court).  But, even if admissible under one of the exclusions or exceptions to the hearsay rule, plaintiff Otero's testimony about her conversations with Captain Tisinger refer to his subjective beliefs about his promotional processes.  This evidence can't support a finding or inference of pretext in the 2020 Captain promotional process.  *DePaula*, 859 F.3d at 971 (explaining that courts must evaluable the facts "as they appear *to the person making the decision*" and not someone else's "subjective evaluation of the situation" (citation and internal quotation marks omitted)).

### vi.   Plaintiff Otero's Allegations about Chief Donchez

*Sixth*, plaintiff Otero alleges that "Chief Donchez . . .  wanted to promote anyone other than" her.  Doc. 36 at 33.  And, she contends, even though defendant eventually promoted her to Captain in 2021, that "Chief Donchez still preferred a younger male candidate with almost no experience[,]" in the 2021 promotional process.  *Id.* at 27.  Plaintiff Otero fails to come forward with (or cite) any evidence showing that the younger, male candidate in the 2021 promotional process (Sergeant Stephens) had "almost no experience."  *Id.*  And, while it's undisputed that Chief Donchez ranked Sergeant Stephens as his first choice for the 2021 promotion, Doc. 36-1 at 254–56 (Morgan Dep. 253:17–256:19), the other Final Interview Panel members ranked plaintiff Otero higher, making her the highest-rated candidate among the Final Interview Panel, Doc. 33-2 at 5 (Donchez Decl. ¶ 58); *see also* Doc. 36-1 at 260 (Morgan Dep. 259:19–23).  And, it's undisputed that Chief Donchez—who is the final decision-maker for promotions to the Captain

and Major ranks, Doc. 33-4 at 8 (Donchez Dep. 63:13–23)—promoted plaintiff Otero to Captain in 2021. These facts can't support a reasonable finding or inference of pretext when Chief Donchez ultimately decided to promote plaintiff Otero to the Captain position over the younger, male candidate.

### vii.    Conclusion

In sum, none of plaintiff Otero's proffered reasons—considered individually or as a whole—permit a finding or inference that defendant's neutral reasons for promoting Hruska to Captain after the 2020 Captain promotional process was a pretext for sex, race, age, or national origin discrimination. Thus, the court grants summary judgment against plaintiff Otero's Title VII and ADEA discrimination claims based on defendant's decision to promote Hruska to Captain.

### b.  Defendant's Promotion of Richard Breshears

*Next*, the court addresses plaintiff Otero's claim that defendant's promotion of Richard Breshears to Captain in November 2020 was discriminatory based on sex, age, race, and national origin. Again, defendant doesn't challenge the first step of the *McDonnell Douglas* framework. So, the court assumes that plaintiff Otero has satisfied her burden to establish a prima facie case of discrimination.

At the second step of the framework, defendant has satisfied its burden to come forward with a legitimate and nondiscriminatory reason for its decision to promote Breshears. Chief Donchez testified that, when defendant had an opening for an Acting Major position in August 2020, he temporarily promoted Breshears to Acting Captain because of his second-place finish for the Final Interview Panel in the 2020 Captain promotional process and his recent exceptional work coordinating the funeral for a fallen Overland Park police officer. Doc. 33-2 at 5 (Donchez

78

Decl. ¶¶ 53–54).  And then, in November 2020, defendant promoted Breshears to Captain.  Doc. 33-4 at 7 (Donchez Dep. 59:18–25).  Chief Donchez selected Breshears for the Captain position because of his strong performance in the promotional process (as noted, finishing second in the rankings by the Final Interview Panel), his recent exceptional work on the officer's funeral, and his good work during his time as an Acting Captain.  *Id.* at 7, 15 (Donchez Dep. 58:1–18, 93:2–13).  Defendant's stated reasons for promoting Breshears are legitimate and non-discriminatory.

Turning to the third step of the *McDonnell Douglas* test—pretext—plaintiff Otero relies on many of the same arguments already discussed for defendant's decision to promote Hruska to Captain.  For the same reasons, the court finds that those arguments can't support a reasonable finding or inference of pretext.

Also, plaintiff Otero asserts that she "was skipped in line for the next immediate promotion."  Doc. 36 at 32.  The summary judgment facts don't support this claim.  Instead, it's undisputed that Breshears finished second in the Final Interview Panel's rankings.  And, there is no evidence that defendant promotes candidates simply based on seniority.  To the contrary, the evaluators testified about many factors that they considered when ranking the candidates.  Although some evaluators consider the candidates' years of service, that wasn't the only factor they considered.  And, the summary judgment facts certainly don't show it was the determinative factor in the promotion decision.

Next, plaintiff Otero asserts that she can show pretext because she was better qualified for promotion to Captain than Breshears.  But, her argument is based on her subjective beliefs about the two candidates' qualifications and doesn't present a triable issue of pretext.  *See DePaula*, 859 F.3d at 971 (explaining that when "determining whether the proffered reason for a decision was pretextual," the court must "examine the facts as they appear *to the person making*

*the decision*," and "do[es] not look to the plaintiff's subjective evaluation of the situation" (citation and internal quotation marks omitted)).

Instead, the summary judgment facts show that Breshears had more education than plaintiff Otero. Both candidates have Bachelors' degrees, but when they applied for the 2020 Captain promotion, Breshears had completed credit hours toward a Master's Degree. Doc. 33-20 at 2–3 (Breshears Dep. 8:2–10:1); Doc. 33-2 at 4, 55 (Donchez Decl. ¶ 40 & Attach. 16). Plaintiff Otero had completed no such coursework. And, although plaintiff Otero had a few more years' experience with the Police Department than Breshears, and she ranked higher than Breshears in the Captains' roundtable (which is advisory in nature), she ranked fifth in the Final Interview Panel rankings, ranking three spots below Breshears in second place. Also, Breshears received better ratings from the Final Interview Panel on his performance in the role play than plaintiff Otero received. *Compare* Doc. 33-2 at 4, 72 (Donchez Decl. ¶ 47 & Attach. 20) (showing Breshears received 19 "highly effective" ratings and 13 "moderately effective" ratings), *with* Doc. 33-23 at 4 (Otero Promotional Process Summary) (showing plaintiff Otero received five "highly effective" ratings, 26 "moderately effective" ratings, and one "improvement needed" rating). These facts don't support a genuine question whether there was "an overwhelming disparity in qualifications" between Breshears and plaintiff Otero. *Johnson*, 594 F.3d at 1211 (internal quotation marks omitted). Thus, plaintiff Otero's argument that she was the better qualified candidate for promotion presents no triable issue of pretext.

Also, plaintiff Otero asserts that Breshears had a history of performance issues. But, the evidence she cites to support this summary judgment fact is her own, subjective testimony about Breshears' performance. That testimony doesn't support a genuine issue of pretext. *See DePaula*, 859 F.3d at 971 (instructing courts to "examine the facts as they appear *to the person*

*making the decision*," and prohibiting courts from "look[ing] to the plaintiff's subjective evaluation of the situation" (citation and internal quotation marks omitted)).

Finally, plaintiff Otero cites Breshears's testimony that Chief Donchez, when he informed Breshears that defendant was promoting him to Acting Captain, said "There is no ranking" and "There was no number 2" in the promotional process. Doc. 36-7 at 31 (Breshears Dep. 30:3–24). This testimony—by a candidate in the promotional process who lacks personal knowledge about the final rankings—doesn't create a triable issue over pretext. The summary judgment standard requires the court to accept as true the proposition that Chief Donchez made this statement to Breshears. But the standard doesn't require the court to accept the Chief's statement as accurate. It isn't accurate. The summary judgment facts establish that the candidates in the 2020 Captain promotional process received rankings and that the Final Interview Panel ranked Breshears, on average, as second. Doc. 33-22 at 1 (Ranking Sheet); Doc. 33-9 at 2–3 (Houston Decl. ¶ 11 & Attach. 1). No reasonable jury could conclude from the Breshears testimony that defendant's proffered evidence about the rankings—*i.e.*, the ranking sheet and the testimony from witnesses actually involved in the ranking of candidates for promotion—is unworthy of belief. Instead, the summary judgment facts confirm that defendant promoted Breshears to Acting Captain because he finished second in the promotional process (while plaintiff Otero finished fifth). The Breshears testimony about Chief Donchez's inaccurate comment on the rankings just doesn't provide a basis for a reasonable jury to conclude that defendant's reason for promoting Breshears to Acting Captain was pretext for sex or age discrimination.

In sum, plaintiff Otero has failed to present a triable issue whether defendant's decision to promote Breshears to Captain in November 2020 was discriminatory based on sex, age, race,

or national origin.  Thus, the court grants summary judgment against plaintiff Otero's Title VII and ADEA discrimination claims based on Breshears's promotion to Captain.

## 2.  Retaliation Claims

Plaintiff Otero's Title VII retaliation claims fail for most of the same reasons that her discrimination claims don't survive summary judgment.  As already explained, the *McDonnell Douglas* burden-shifting framework also applies to plaintiff Otero's Title VII retaliation claims.[22] *Davis*, 750 F.3d at 1170.  As discussed, defendant has come forward with a legitimate and non-retaliatory reason for promoting Breshears to Captain—*i.e.*, Chief Donchez promoted Breshears to the Captain position because of his strong performance in the promotional process (finishing second in the Final Interview Panel's rankings), his recent exceptional work on the officer's funeral, and his good work during his time as an Acting Captain.  Doc. 33-4 at 7, 15 (Donchez Dep. 58:1–18, 93:2–13).  Defendant's stated reasons for promoting Breshears are legitimate and non-discriminatory.

To show pretext, plaintiff Otero simply asserts that she was better qualified for the promotion than Breshears.  But, for reasons already discussed, the summary judgment record doesn't support her contention.  Also, she cites the temporal proximity between her filing of the charge in September 2020 and Breshears's promotion in November 2020.  But, temporal proximity alone can't support a finding of pretext.  *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (explaining in Title VII retaliation case that "close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment").  And, plaintiff Otero filed her charge of discrimination *after* defendant had promoted Breshears to the Acting Captain position.  Plaintiff Otero concedes that, historically, Captain candidates who are

---

[22]      According to the Pretrial Order, plaintiff Otero asserts her retaliation claim under Title VII only. Doc. 29 at 12 (Pretrial Order ¶ 4.a.viii.).

placed in an extended Acting Captain role following a promotional process generally receive the next available Captain promotion.  Doc. 33-18 at 16–17 (Otero Dep. 117:20–118:6).  Although defendant didn't promote Breshears to Captain until November 2020, it promoted him to Acting Captain in August 2020 before plaintiff Otero filed her Charge of Discrimination in September 2020.  In this setting, plaintiff's timing arguments don't present a triable issue of pretext.

Also, plaintiff Otero asserts that she was "publicly embarrassed by her retaliatory treatment."  Doc. 36 at 32.  But, embarrassment isn't something that can establish that defendant's reasons for promoting Breshears were pretextual.

The undisputed summary judgment facts show, instead, that defendant placed the second-ranked candidate in the 2020 Captain promotional process—*i.e.*, Breshears, who ranked three spots ahead of plaintiff Otero—in the Acting Captain position and later promoted him to Captain because of his strong performance in the promotional process and his work on an officer's funeral.   Here, nothing in the summary judgment record permits a reasonable jury to find or infer that this decision was pretext for retaliation.  And without evidence of pretext, the court can't "'act as a "super personnel department," second guessing [defendant's] honestly held (even if erroneous) business judgments'" about defendant's decision to promote Breshears.  *Riggs*, 497 F.3d at 1119 (quoting *Young*, 468 F.3d at 1250).  Thus, plaintiff Otero's retaliation claims fail as a matter of law and the court thus grants summary judgment against those claims.

## IV.    Conclusion

For reasons explained, the court grants summary judgment against each of plaintiff Morgan and plaintiff Otero's Title VII and ADEA discrimination and retaliation claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant City of Overland Park, Kansas's Motion for Summary Judgment (Doc. 32) is granted.  Consistent with this Order, the court directs the Clerk to enter Judgment against plaintiffs.

**IT IS SO ORDERED.**

**Dated this 8th day of July, 2022, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**

84